SCHLEI, Appellant, vs. STRUCK, Respondent.

*February 28 — March 19, 1901.*

*Boundaries: Surveys: Fences: Adverse possession: Estoppel: Court and jury: Evidence: Fences in adjoining section: Records of public officers: Admissibility: Appeal: Bill of exceptions.*

1. In an action of ejectment involving the location of a boundary line, it is *held*, upon the evidence, to have been for the jury to say whether the fences between the parties were built by agreement and whether either party had by his conduct or by long acquiescence estopped himself, and also to say which of three differing surveys, each of which located the true line on defendant's side of the fence, was correct.

2. Evidence as to how a fence on a disputed line agrees with fences in an adjoining section is inadmissible, unless the natural boundaries or monuments and the monuments or stakes set in the course of the original survey cannot be found.

3. As a general rule, when public officers are required by statute to make a record of official acts, such records are admissible in evidence if relevant to the controversy.

4. Where a record is offered in evidence and rejected, and the question of its admissibility is to be raised on appeal, so much of it as will enable the court to consider the question intelligently must be preserved in the bill of exceptions.

APPEAL from a judgment of the circuit court for Outagamie county: JOHN GOODLAND, Circuit Judge. *Reversed.*

This is an action of ejectment to recover possession of two small tracts of land,— one on the south side of the S. E. ¼ of the N. E. ¼ of section 16, town 19, range 21 E., commencing at the southeast corner and running west 9.90 chains, and being .26 chains wide at the west end and .40 chains wide at the east end. The other is a strip of land somewhat irregular in shape, on the south side of the N. W. ¼ of the N. E. ¼ of the same section. On the trial a verdict was directed for defendant on the ground that there was no sufficient evidence of plaintiff's title to go to the jury. The plaintiff has appealed from the judgment in defendant's favor.

Schlei vs. Struck.

For the appellant there was a brief by *Nash & Nash*, and oral argument by *L. J. Nash*.

For the respondent there was a brief by *C. E. McMullen*, attorney, and *J. E. McMullen*, of counsel, and oral argument by *J. E. McMullen*.

BARDEEN, J. The plaintiff owns the E. ½ and the N. W. ¼ of the N. E. ¼ of section 16. The defendant owns the S. W. ¼ of the N. E. ¼ and the N. E. ¼ of the S. E. ¼ of the same section. One of the disputes between the parties relates to the true location of the east and west quarter line of the section. The plaintiff insists that the quarter post on the east line is lost, and that the quarter line should be run equidistant between the two section corners. To establish this contention, he produced three surveyors who had made surveys of the section. It is unnecessary to canvass the testimony of these witnesses in detail. No two of them agreed upon the exact location of the line. Mr. O'Hara, who made a survey in 1895, located the east quarter post about five rods south of the fence maintained by defendant. He admitted on the trial that this post should have been placed about three and one-half rods further south. The defendant was not satisfied with this survey, so he employed Mr. Ertz to make a survey in 1896. Ertz made another survey in 1897, and found that defendant's fence was forty links, or twenty-seven feet, too far north at the east end, and twenty-six links, or seventeen feet, at the west end. Mr. Pitz also made a survey in 1897, which varied from the others and gave the plaintiff more land than either of the other surveys. There is no question but that defendant's fence is some distance north of either of the three lines established by the surveyors. As near as we can get at it from the mass of testimony produced, defendant claims that he built his fence in 1878 in accordance with some line pointed out by the plaintiff, and in accordance with other fences in that neigh-

borhood.   The plaintiff claims that this, as well as the other fences in dispute, was not intended to be permanent, as no one knew the true location of the division lines.   Testimony was offered in support of the claims of each, and in most instances was in direct contradiction.   The fence on the south side of the N. W. ¼ of the N. E. ¼ was built of stumps, and is somewhat irregular in its course.   It is some distance north of the line established by the surveyors.   It was first built in 1875 or 1876, and defendant claims twenty years' adverse occupancy.   The circumstances connected with the building of this and the other fences are in dispute between the parties, as well as the location of the true line between them as fixed by the surveyors.

The contest was one peculiarly for the jury.   The evidence either way is not so overwhelming as that this court can say there was nothing to be submitted to the jury.   On the contrary, there were sharp disputes, conflicting inferences, and important deductions to be drawn from the testimony, which made the issues proper for jury determination.   It was for the jury to say whether the fences were built by agreement, and whether either party has by his conduct or by long acquiescence estopped himself.   It was for the jury to determine which of the surveyors' lines was the correct one.   Counsel for the defendant seems to think that, because they failed to agree in their surveys, there was no basis upon which the jury could act.   As to the quarter line, they all agreed that plaintiff's fence was too far north. Now, unless the jury find that such fence was put there under an agreement as to the true line, and has been maintained under such circumstances as that plaintiff is estopped from questioning it, or that the land sought to be recovered has been adversely occupied for such a length of time as to preclude recovery, they must necessarily determine which of the surveyors' lines is the correct one.   Under any view of the case, this variance in the testimony did not invest the

court with authority to disregard the testimony entirely, or to direct a verdict for either party. We have mentioned but a few of the most prominent facts that seem to command a submission of this case to the jury. Others appear in the record, and need not be specifically mentioned. A new trial may relieve the case of many of its seeming embarrassments.

The testimony as to how defendant's fences agreed with fences in an adjoining section was immaterial, and should have been rejected. *Fairfield v. Barrette,* 73 Wis. 463; *Fuller v. Worth,* 91 Wis. 406. This rule, however, may have to yield if the case is brought within the principle stated in *Galesville v. Parker,* 107 Wis. 363, and cases cited.

As regards the refusal of the court to allow the plaintiff, in rebuttal of the testimony of August Schmidt, to show by the county surveyor's record matters to dispute such testimony, the bill of exceptions is not sufficiently definite to give us a basis upon which to determine the question. The witness had testified at length regarding a survey made in 1868 or 1869 by Fayette Ormsby, the then county surveyor. The law required him to keep a correct and fair record of all surveys made by him, in a book provided by the county for that purpose, and to preserve the field notes and calculations of each survey. The law nowhere declares the legal effect of such records, but the rule is general that, when persons in public office are required by statute to make a record of their official acts, such records are admissible in evidence if relevant to the controversy. Jones, Ev. § 520. With this in mind, both the counsel and the court will be able to keep from error on another trial. The poverty of the record as to the substance or contents of the rejected evidence renders it impossible for us to say the court erred in the matter complained of. What was said by this court in *Dodge v. O'Dell's Estate,* 106 Wis. 296, demonstrates the necessity of carefully preserving in the bill of exceptions so

much of the rejected records as will enable us to intelligently consider the question raised.

*By the Court.*— The judgment is reversed, and the cause is remanded for a new trial.