## Louisville & Nashville Railroad Company v. E. J. O'Brien & Company.

(Decided February 10, 1916.)

### Appeal from Jefferson Circuit Court (Common Pleas No. 4).

1. Carriers—Interstate Shipment—Damages—Evidence.—In an action for damages to two shipments of tobacco, alleged to have been injured by the negligent delay of the carrier in transporting the shipments, evidence examined and held sufficient to take the case to the jury and to sustain a verdict for $1,000.00.

2. Trial—Instructions—Error.—A mere prefatory instruction, telling the jury that it was the duty of the carrier to deliver freight promptly, is not prejudicial where the question was not submitted to the jury but was decided by the court.

3. Trial—Instructions—Assumption of Facts.—Where two shipments of tobacco were injured in a flood, but did not reach their destination until twenty days after they were started from the scene of the flood, and the railroad company did not trace the cars and account for the delay, the trial court did not err in telling the jury that the delay was unreasonable and that the tobacco was further damaged by the delay, when the only evidence on the question showed that the trip could have been made in a much shorter time, and the longer the delay the greater would be the damage to the tobacco.

4. Evidence—Reply Letters—When Proof of Genuineness Unnecessary.—When a party is shown to have addressed and sent a letter to the local agent of a railroad company asserting a claim against the company, a letter received by him in due course of mail, purporting to have been written and signed by the freight claim adjuster of the same company, and showing on its face that it is in reply to the letter addressed to the local agent and forwarded

by him to the writer, is prima facie genuine and is admissible in evidence without other proof of its authenticity.

T. K. HELM and CHARLES H. MOORMAN for appellant.

O'DOHERTY & YONTS and THOMAS C. MAPOTHER for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

In this action for damages to two shipments of tobacco from Frankfort, Kentucky, to Jersey City, New Jersey, plaintiff, E. J. O'Brien, doing business as E. J. O'Brien & Company, recovered of the defendant, Louisville & Nashville Railroad Company, a verdict and judgment for $1,000.00. Defendant appeals.

Briefly stated, the facts are as follows: The tobacco, consisting of thirty-two hogsheads and valued at $2,312.75, was delivered to the Louisville & Nashville Railroad for shipment on the afternoon of March 20, 1913. It reached Dayton, Ohio, on the afternoon of March 24. The two cars containing the tobacco were then delivered to the Erie Railroad and placed in a through train due to leave the same day at 10:15 P. M. Owing to the high water and consequent washouts between Dayton and Marion, the train was held for about three hours and subsequently released. The next morning between eight and nine o'clock the Lewistown reservoir broke and the city of Dayton was enveloped by an unprecedented flood. The railroad yard was covered by water. Many of the cars were completely submerged. The water on others reached to a point three or four feet above the trucks. The road was unable to move any trains until April 4. The cars in question went out on the first train. The tracks north of Dayton were washed out and temporary repairs had to be made in order to get the train over after the water went down. It was about three weeks before normal conditions were restored. The cars in question did not reach Jersey City until April 20. They were placed on a siding adjoining the Jarvis warehouses. Mr. Jarvis inspected the tobacco. At a distance of about three feet above the floor of the cars there was a dry muddy line extending the full length of the cars. He opened one of the cars and saw the same dry muddy line on the hogsheads. He then advised E. J. O'Brien & Company of the condition

of the tobacco and they instructed him to refuse delivery. Richard J. Whallen, plaintiff's manager and a tobacco expert of long experience, testified that although the tobacco was damaged by water, yet, if only half of the hogsheads were submerged and the tobacco was promptly rehandled, there would be a salvage of from 50 to 75 per cent. On the other hand, the longer it was permitted to remain wet the greater would be the damage. Over the objection of the defendant, plaintiff introduced a letter which he received from H. C. Barlowe freight claim adjuster of the Erie Railroad, in reply to one which he had addressed the Louisville agent of that road, stating that as his tobacco was refused, the railroad was compelled to sell it, and that after paying the advertising and other expenses of sale the net amount realized was $8.41.

The trial court held, as a matter of law, that the unprecedented flood at Dayton was an act of God and was the proximate cause of all the damage that accrued prior to the time the tobacco left Dayton, and authorized the jury to find only such damages as resulted from the unreasonable delay between Dayton and Jersey City. The court further held, as a matter of law, that there was an unreasonable delay and authorized the jury to find for plaintiff the difference between the market value of the damaged tobacco when delivered, and its market value when it should have been delivered at Jersey City.

Defendant insists that the evidence of damage after the tobacco left Dayton is entirely too speculative to justify the verdict. This contention is based on the ground that Whallen, who testified on the subject, did not know the extent of the damage by the flood or the condition of the tobacco when it reached Jersey City. It appears, however, that the water line reached to about the middle of the hogsheads, and there is no evidence to the contrary. His opinion of the extent of the salvage was based on this fact. He says that although about one-half of the tobacco was wet, there would have been a salvage of from 50 to 75 per cent. if the tobacco had been promptly delivered and rehandled. It is true that no one testifies to the exact condition of the tobacco when it was delivered at Jersey City. However, the letter of the freight claim adjuster of the Erie Railroad shows that the tobacco was advertised for sale and sold on the market, and after the expenses were paid the net pro-

ceeds amounted to $8.41. In other words, the tobacco was practically worthless. The uncontradicted evidence also shows that the market price of the tobacco, if it had been delivered in an undamaged condition at Jersey City, would have been $2,312.75 plus the cost of transportation, amounting to $181.47, or a total of $2,494.22. On the basis of a salvage of 50 per cent., if the tobacco had been promptly delivered after the damage at Dayton, the evidence would have authorized a verdict of $1,156.37. On the basis of a salvage of 75 per cent., the evidence would have authorized a verdict of $1,734.57. As the tobacco was practically worthless when delivered, and as the verdict of $1,000.00 is less than the lowest sum fixed by the witness, or the sum of $1,156.37, we conclude that the evidence was sufficient not only to take the case to the jury, but to sustain the verdict.

The point is also made that the trial court erred in telling the jury that it was the duty of the defendant and its connecting carriers after the tobacco had been damaged by the flood at Dayton, and as soon as the flood conditions at that place would permit, to remove the said tobacco from that place and promptly carry the same to Jersey City, and to deliver it, or offer to deliver it, to the plaintiff; and in further instructing the jury that it had been proven by undisputed evidence that the defendant and its connecting carriers failed to perform this duty, and by reason thereof the tobacco was caused to be further injured and damaged. It is first insisted that the instruction imposed on the defendant and its connecting carriers too high a degree of care. Whether this be true or not it is unnecessary to decide. The instruction, in so far as it bears on the question of promptness, is merely prefatory and abstract. The question itself was not submitted to the jury. That being true, defendant was not prejudiced by the instruction unless the court itself erred in holding, as a matter of law, that there was an unnecessary delay in the shipments after they left Dayton, and that by reason thereof the tobacco was further damaged. It is true that defendant shows that, even after April 24, when the shipments were started, its tracks were in bad condition by reason of the flood. Defendant, however, did not follow this statement up and actually show that such condition was the cause of the delay. It did not undertake to trace the cars and account for the delay at any particular

point. The evidence shows that the usual time to transport such a shipment, even from Louisville, Kentucky, is about five days. Dayton is much nearer Jersey City. Prior to reaching Dayton several transfers must be made. From Dayton to Jersey City there is a through train. From that point on there was a delay of twenty days. In view of the defendant's failure to account for the delay, the court did not err in assuming that the delay was unreasonable. But it is argued that the court erred in assuming that the tobacco was injured by the further delay. On this point the evidence shows that the longer tobacco is permitted to remain wet the greater the damage. There is no evidence to the contrary. The court, therefore, had the right to assume that the tobacco was further damaged and to leave the extent of the damage to the jury.

Another ground urged for reversal is the admission of the letter of the freight claim adjuster of the Erie Railroad without preliminary proof of its genuineness. The facts attending the introduction of the letter are as follows: On April 25, 1913, plaintiff wrote a letter to S. W. Moore, agent, Erie Railroad, Louisville, Kentucky, in which he advised him of the damage to the tobacco in question and of the refusal of the Jarvis warehouses to accept it, and presented a claim against the Erie Railroad for the sum of $3,294.08. On July 10, plaintiff received a typewritten letter on the letterhead of the Erie Railroad Company, Office of Freight Claim Adjuster, purporting to be signed by H. C. Barlow, F. C. A. The subject of the letter is Claim E-151958—L&D. The letter is addressed to Messrs. E. J. O'Brien & Company, Louisville, Kentucky. It begins as follows:

"We have your letter of April 25, 1913, addressed to Mr. S. W. Moore, our agent at Louisville, Ky., enclosing a bill for $3,294.08, said to be the value of 42 hhds. of tobacco damaged in transit."

The letter goes on to state that the tobacco in question was caught in the flood and that the company was not responsible because the damages were due to an act of God. The letter concluded as follows:

"Inasmuch as the tobacco was refused and left on our hands, we were obliged to dispose of same in the interest of whom it may concern, and accordingly turned it over to auctioneers, who disposed of it to the best possible advantage, the net amount realized being $8.41.

We have this amount on hand after taking care of the advertising and other expenses of sale.''

Professor Greenleaf, in his work on Evidence, Section 575c, 16th Edition, says:

''A further exception to the rule requiring proof of handwriting has been admitted in the case of letters received in reply to others proved to have been sent to the party. Thus, where the plaintiff's attorney wrote a letter addressed to the defendant at his residence, and sent it by the post, to which he received a reply purporting to be from the defendant, it was held that the letter thus received was admissible in evidence, without proof of the defendant's handwriting; and that letters of an earlier date, in the same handwriting, might also be read, without other proof.''

In 17 Cyc., 411, the rule is thus stated:

''A letter received in the due course of mail purporting to be written by a person in answer to another letter proved to have been sent to him is *prima facie* genuine, and is admissible in evidence without proof of the handwriting or other proof of its authenticity.''

This doctrine has been approved and followed in a number of cases. National Acc. Soc. v. Spiro, 78 Fed., 774, 24 C. C. A., 334; White v. Tolliver, 110 Ala., 300, 20 So., 97; Dick v. Zimmerman, 207 Ill., 636, 69 N. E., 754; Davis v. Robinson, 67 Iowa, 355, 25 N. W., 280; Lyon v. Railway Pass. Assur. Co., 46 Iowa, 631; Melby v. Osborne, 33 Minn., 492, 24 N. W., 253; Atlantic Ins. Co. v. Manning, 3 Colo., 224; Chicago, etc. R. Co. v. Roberts, 10 Colo. App., 87, 49 Pac., 428; J. H. Sanders Pub. Co. v. Emerson, 64 Mo. App., 662.

We see no reason why the rule should not be extended so as to apply to the facts of this case. Here plaintiff proved that he had sent a letter to S. W. Moore, agent of the Erie Railroad at Louisville, Kentucky. He introduced in evidence a copy of the letter. In this letter he asserted a claim against the railroad for damages to the tobacco in question. The natural thing for the agent to do would be to send the letter to the particular agent of the company having jurisdiction of freight claims. The letter in dispute shows on its face that it is in reply to the letter of plaintiff addressed to S. W. Moore, the local agent of the Erie Road at Louisville, and forwarded to the writer. It is written on the letter head of the Erie Railroad and purports to come from the office of the

freight claim adjuster and to have been signed by him. The letter shows on its face that it had reference to the very claim asserted by plaintiff. As the purpose of plaintiff's letter, though addressed to the agent at Louisville, was to assert a claim against the company, and the purpose of the reply, though coming from another agent, was to deny the justice of the claim against the company and to show what disposition was made of the tobacco, the effect is the same as if plaintiff's letter had been addressed and sent to, and the reply had been signed by and had come from, the company itself. We, therefore, conclude that the facts were sufficient to make out a *prima facie* case and to authorize the introduction of the letter without proof of its genuineness.

Finding in the record no error prejudicial to the substantial rights of the defendant, it follows that the judgment should be affirmed, and it is so ordered.