# Hoosier Mining Company v. Union Trust Company, et al.

(Decided January 30, 1917.)

## Appeal from Crittenden Circuit Court.

1. Trusts—Co-Trustees Must Act Jointly.—Co-trustees vested with discretionary powers and which require for their exercise judgment and business qualifications must act jointly in the exercise of such powers, unless a different purpose be expressed in the instrument creating the trust, or unless there is a statute governing the subject.

2. Trusts—Contract in Furtherance of Trust.—Where the facts are such as to require united action on the part of co-trustees, a contract in furtherance of the trust jointly executed may not be materially altered without the unanimous consent of all the trustees, unless there exist the exceptional instances mentioned in the first paragraph above.

3. Trusts—Rule as to United Action of Trustees—Application.—The rule requiring united action on behalf of trustees does not apply where the act to be performed is purely ministerial, it being competent for one trustee or any less number than the whole to perform such acts.

CARL HENDERSON, L. H. JAMES and W. H. WHITAKER for appellants.

GORDON, GORDON & COX, V. Y. MOORE, A. C. MOORE and JOHN W. BLUE, JR., for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Samuel G. Brown died testate, domiciled at the time in the city of Pittsburg, Pennsylvania. He owned at the time of his death, as a part of his estate, the property involved in this suit, situated in Crittenden county, Kentucky, which consisted of all minerals and the right to mine them, located in a tract of land in that county containing 191 acres.

The will was probated both at the place of the testator's domicile and in the county court of Crittenden county. By it the testator devised all of his residuary estate to the appellee, Union Trust Company of Pittsburg, a corporation, and his brother, the appellee, W. Harry Brown, also of Pittsburg, as trustees, which devise, covered by the nineteenth clause of the will, is in this langauge:

"Nineteenth. All the rest and residue of my estate, real, personal and mixed, wheresoever the same may be situated, I give, devise and bequeath to my brother, W. Harry Brown, his heirs and assigns, and to the Union Trust Company of Pittsburg, its successors and assigns, in the special confidence and trust, nevertheless, that they will improve, manage and control the same in their discretion, and will from time to time pay the net income arising therefrom for the period of five years next succeeding my death in manner following, viz.: One-half thereof to my brother, W. Harry Brown, his heirs and assigns, and one-half thereof to my sister, Lizzie B. Ward, wife of James Ward, for her sole and separate use as hereinafter provided."

By the twentieth clause of the will the testator authorized and empowered his trustees ''to bargain and sell any part of and all my residuary estate, real and personal, not herein specifically bequeathed and devised for such price and on such terms as to the said trustee shall seem best, and the same to assign, transfer and convey from time to time to the purchaser and purchasers by bill of sale, deed of conveyance or other sufficient instrument of writing.'' He then provides that the purchaser of any of the property which the trustees may sell or convey shall be relieved of seeing to the application of the purchase money.

After the probating of the will the trustees qualified and have continued to act as such.

Previous to the 29th day of June, 1910, an agreement had been reached between the trustees and certain individuals doing business under the name of the Hoosier Mining Company by which the latter concern agreed to and did lease for a period of five years from and after April 1, 1910, all of the mineral property and the mining rights and privileges incident thereto and necessary for the operation of the mining business owned by the testator in the tract of land above mentioned. This lease was reduced to writing on June 29, 1910, and duly signed and acknowledged by both trustees. After this the persons to whom the lease was given incorporated themselves under the name of Hoosier Mining Company and took charge of the property and commenced mining operations thereon and have continued at more or less regular intervals to operate it, or at least until the filing of this suit.

There is a clause in the lease giving to the lessees an option to purchase the property upon specified terms provided the option should be exercised on or before July 1, 1911. The provision of the lease containing the option privilege is in this language:

''It is expressly agreed by and between the parties hereto that the second parties named herein shall and do have the sole and exclusive option to purchase the mineral rights described herein; that the first parties, for and in consideration of the royalties to be paid, and for other good and valuable consideration, agree that on or before the 1st day of July, 1911, for and in consideration of ten thousand ($10,000.00) dollars to be paid by the second parties, to convey or cause to be

conveyed by good and sufficient warranty deed to the
second parties, their heirs and assigns, the title which
said Samuel S. Brown acquired under that certain in-
denture dated the 20th day of October, 1891, and re-
corded as aforesaid, in and to the mineral and mining
rights fully described in said indenture, and said first
parties further agreed to furnish an abstract of their
title to the said mineral or mining rights.

"It is further agreed that second parties may at any
time after the signing of this contract and before July
1st, 1911, after having given the first parties reasonable
notice of their intention, pay the ten thousand ($10,-
000.00) dollars, at which time first parties shall execute
a deed and furnish abstract as above stipulated. The
various acts to be done by said parties shall be concur-
rent."

By the terms of the lease it expired on April 1,
1915, and no conveyance of the property having been
made to the Hoosier Mining Company, the trustees in-
sisting that it had failed to exercise its right under the
option to purchase the property under the terms con-
tained therein or any legally modified terms, conveyed
the property on March 17, 1915, to the corporation ap-
pellant, West Kentucky Ore Company.

After the expiration of the lease on April 1, 1915,
possession of the property was demanded of Hoosier
Mining Company and it declined to surrender same,
after which and on May 23, 1915, this suit at law was
filed by the two trustees under the will of Samuel S.
Brown for themselves and for the use and benefit of the
West Kentucky Ore Company, and West Kentucky Ore
Company against the Hoosier Mining Company and
two individuals who were tenants of the latter company,
which suit sought a recovery of the property and dam-
ages for the withholding of it.

The answer consisted of several paragraphs in
which various defenses were relied on, but under the
conclusion we have reached, we deem it necessary to
consider but one of them. Before July 1, 1911, the de-
fendant, Hoosier Mining Company, claims to have exer-
cised its right to purchase and that it did agree to pur-
chase the property; that in compliance with its agree-
ment to purchase it paid to the trustee, Union Trust
Company, of Pittsburg, $1,000.00, and has been ready,
able and willing continuously since then to pay the bal-

ance of the purchase money, amounting to $9,000.00, whensoever it was furnished a deed to the property. That the trustees had failed and refused to execute the deed and that under its rights obtained, as insisted upon by it, it has an equity in the property entitling it to the possession, of which it should not be deprived by judgment in this suit.

The allegations of the answer, including that portion setting up the defense stated, were denied by appropriate pleadings, and upon trial before a jury the court at the conclusion of the testimony offered by defendants, they having been adjudged the burden of proof, a verdict was directed to be returned in favor of plaintiffs, which was done, and from the judgment rendered thereon, this appeal is prosecuted.

To sustain their defense the defendants filed with their pleading and offered in evidence the following writing:

"Pittsburg, Pa., June 30th, 1911.

"Union Trust Co., of Pittsburg.

"R. C. MacEldowney, Pres.
"A. W. Mellon, Vice Pres.
"J. M. Shoonmaker, 2nd Vice Pres.
"William I. Berryman, Trust Officer.
"Carrol P. Davis, Asst. Trust Officer.

"Received of J. L. Riddle, secretary of the Hoosier Mining Co., the sum of one thousand ($1,000.00) dollars of the consideration under the terms of a certain agreement dated 29th day of June, 1910, between W. Harry Brown and the Union Trust Co. of Pittsburg, executors and trustees under the will of Samuel S. Brown and W. H. Whitaker, J. L. Riddle, Geo. H. Cramer doing business with the Hoosier Mining Company wherein the latter had the option to purchase from the former certain mining rights in said agreement described, which option has been excepted, the balance of the purchase money to be secured or paid upon the execution and deliverance of a deed in consummation of the exercise of said option accepted as above stated.

"THE UNION TRUST CO., OF PITTSBURG,
Executor and trustee under the will
of Samuel S. Brown.
"By WILLIAM I. BERRYMAN,
Trust Officer."

They also introduced upon the trial, over the objections of the plaintiff, the following letters· purported to have been written by the trustee, W. Harry Brown:

"Estate of Samuel S. Brown, 7 Wood Street.

"Pittsburg, Pa., June 20, 1911.

"Hoosier Mining Company,
 J. L Riddle, Sec. & Treas.,
  211 Portland Street, Vincennes, Ind.

"Dear Sir:—Yours of recent date received. I note that your company did not sell any fluor spar during the month of May, and also that you desire to extend for thirty or sixty days the time for payment of one-half the purchase price of $10,000.00 in case you elect a purchase certain mineral rights in what are known as the tab lands in Crittenden county, Kentucky, under option contained in agreement of June 29th, 1910. Such extension would be entirely agreeable to the trustees of this estate on one-half, or $5,000.00, of said purchase price, for time specified, your company to pay interest at rate of six per cent. per annum from and after July 1st, 1911.

"Yours very truly,
"(Signed) W. HARRY BROWN, Trustee."

"Estate of Samuel S. Brown, 7 Wood Street, Pittsburg, Pa.

"August 2nd, 1911.

"W. H. Whitaker, Esq.,
 Shelbyville, Illinois.

"Dear Sir:—Yours of the 30th ult. addressed to Mr. W. I. Berryman, of the Union Trust Co., has been referred to me. Will write to attorney at Marion, Ky., for abstract of what are known as the Tabb lands, the mineral rights under which are covered by lease to you of June the 29th, 1910, and hope to have same ready for your inspection in a short time. Trust you will be able to pay at that time the balance due on the first $5,000.00 installment on purchase money of mineral rights mentioned above and remaining $5,000.00 within sixty days from July 1st, 1911, as agreed, per my letter of June 31st, 1911, to your Mr. J. L. Riddle.

"Yours very truly,
"(Signed) W. HARRY BROWN,
  Executor and Trustee."

They also introduced, over the same objections of plaintiff, a letter from the trustee, Union Trust Company, of Pittsburg, Pennsylvania, purported to have been signed by its trust officer, W. I. Berryman, and which is:

"Union Trust Company, of Pittsburg.

"Pittsburg, Pa., July 19th, 1911.

"H. C. MacEldowney, Pres.
"A. W. Mellon, Vice Pres.
"J. M. Schoonmaker, 2nd V. Pres.
"William I. Berryman, Trust Officer.
"Carroll P. Davis, Asst. Trust Officer.

"In re S. S. Brown estate, Fluor Spar Lands, Crittenden County, Kentucky.

"Mr. W. H. Whitaker,
    Pres. Hoosier Mining Co.,
        Citizens National Bank Bldg.,
            Shelbyville, Indiana.

"Dear Sir:—In the matter of your acceptance of option on June 30th last, for the purchase of certain fluor spar lands for the sum of $10,000.00 on account of which you paid on acceptance the sum of $1,000.00, you are advised that we have submitted to your request, relative to the time of payment of the balance of the consideration, to Capt. W. Harry Brown, our co-executor, and he has expressed a willingness to extend for thirty days from June 30th last, $4,000.00 of the unpaid consideration, and sixty days from June 30th for the balance of $5,000.00, all deferred payments to bear interest at the rate of six per cent. per annum, payable semi-annually.

"Trusting that this may meet with your approval, and that you will advise Capt. Brown, of this company, at your earliest convenience, we are,

        "Yours very truly,
            "(Signed)   WILLIAM R. BERRYMAN,
                        Trust Officer."

It should be here stated that W. H. Whitaker was one of the partners of the Hoosier Mining Company at the time of the taking of the lease and was made its president after it became incorporated.   J. L. Riddle was also one of the partners and became secretary and treasurer of that concern after its incorporation.

In addition to this testimony, it is shown by W. H. Whitaker that no royalties or other consideration for the leasing of the property were paid after July 1, 1911, and that considerable correspondence occurred between defendant corporation and the trustees relative to the option privilege to purchase the property, but he nowhere testified that the defendant was ever able financially to pay for the property, but, on the contrary, states that it was hard pressed and had comparatively no means; that it had been sued and attached numerous times by its creditors and had even been indicted for failing to pay its employees, as required by statute. His testimony conclusively shows that the mining operations of the Hoosier Mining Company upon the leased premises were anything but successful, and one cannot read his testimony without coming to the conclusion that it was a matter of indifference to the lessee as to when, if at all, the trustees should execute a deed to the property. He shows that a deed was prepared at one time, giving no date, however, and sent to the defendant for its inspection, but it was returned, and we are not informed as to the reason why, or if any objections or suggestions were made, and if so what they were. So, the impression from his testimony is irresistible, to say the least of it, that the defendant was in no hurry to be called upon to pay the purchase money should a deed have been executed and tendered to it. But these facts as they relate to the question we are about to discuss are relevant only as furnishing evidence of the defendant's construction of the negotiations as manifested by the above writing, which it now claims was a valid exercise of its option right contained in the lease.

Before entering into the real and decisive question in the case, it is insisted by plaintiffs that the letters referred to should not have been admitted as evidence without proof of their authenticity, and we are referred to the cases of McClain v. Esham, 17 B. Mon. 145; Gentry v. Doolan, 1 Bush 1; Burgen v. Commonwealth, 8 Ky. Law Rep. 613; Beeler's Ex. v. Cumberland & Etc. Co., 150 Ky. 257, as well as text-writers and opinions from other courts as authority for the objection. These authorities hold to the correctness of the rule contended for as a general proposition, and section 527 of the Civil Code of Practice appears to fortify the position, inasmuch as it provides that: ''A writing pur-

porting to have been made by a party, if referred to in, and filed with, a pleading of his adversary, may be read as genuine against him, unless he denies its genuineness by affidavit before the trial is begun.''

Whatever may be the correct interpretation of that section as to whether the writing therein referred to must be one upon which the suit is based, or one evidentiary in character only, it does at least inferentially declare that a writing not so filed with the pleading cannot be read without some proof of its genuineness. Notwithstanding these authorities and the code provision, an exception to the general rule as to the admissibility of letters as evidence upon the trial without accompanying proof of their genuineness has, in some instances, been recognized by this court, as will be found from the opinion in the case of L. & N. R. R. Co. v. O'Brien & Co., 168 Ky. 403, and authorities therein referred to.

We will not stop here to discuss or consider the grounds for, or the facts authorizing, the application of the exception to the rule as found in the last cases referred to, nor will we determine whether the letters objected to in this case do or do not come within the exception, because we have determined that the letters, if admitted as genuine, are not sufficient to establish the defense relied on, as will more fully appear during the progress of this opinion.

Going now to the merits of the case, it will be seen that the plaintiffs, Union Trust Company, of Pittsburg, and W. Harry Brown, are made co-trustees by the nineteenth clause of the will of Samuel S. Brown, and given power and authority to manage and control, in their discretion, all of the residuary property of the testator, including real estate, and by the twentieth clause they are given like power and authority to sell and convey such property in their sound discretion. Testator reposed in them ''special confidence and trust,'' and directed that they control his estate as such trustees ''in their sound discretion,'' and authorized them to dispose of the trust property ''on such terms as to the said trustees shall seem best.'' Manifestly the language here used creating the trust and vesting the trustees with power and authority concerning the trust property not only makes the trustees named *joint* trustees, but also shows a desire on the part of the testator

that his estate should receive the combined exercise of the business ability, discretion and judgment which he conceived his trustees to possess. The further intention is to be gathered that it was his desire and purpose that the trustees which he named should jointly, but not singly, act in all matters pertaining to the trust estate calling for the exercise of the business qualifications enumerated.

We are not dependent alone upon the intention of the testator or the one creating the trust as to the requirement of joint action by the trustees under such circumstances. The law as found in text-writers and adjudicated cases seems to be harmonious upon this subject. The will involved in the case of Winslow v. Baltimore & Ohio Railroad Company, 188 U. S. Reports 646, was one vesting joint trustees with similar power and authority to that vested in appellants as trustees under the will of Samuel S. Brown. Certain property had been leased by the trustees under a joint lease contract to the Baltimore & Ohio Railroad Company for a period of five years, the terms of which it is unnecessary to state, except that one of them was the privilege of renewing the lease by the lessee at its expiration, and another was that the railroad company should have the privilege, under specified terms, to purchase the property. This lease was renewed several times, the last one being executed by only one of the three joint trustees. At its expiration the trustees jointly declined to again renew it, which was followed by some litigation not necessary to state, but afterwards the railroad company filed suit to not only obtain a renewal of the lease, but to enforce a performance of the contract to purchase the leased property. It failed in its suit because the renewal lease under which it based its right to maintain it had not been legally executed for the reason that two of the trustees had failed to join in it. In other words, it was adjudged that the instrument creating the trust conferred upon the trustees in such matters *joint* authority only and which could not be legally exercised by any of the trustees less than the whole. This holding of the trial court was affirmed by the Supreme Court. In the opinion, upon the subject under consideration, it said:

"In fact, however, the lease was not legally renewed in 1892, because the paper of that year was signed by

one trustee only. In our opinion his signature did not make a valid lease. It required the signatures of all the trustees. A deed of land executed by one trustee does not convey his share as in the case of ordinary joint tenants. So where a deed of land was executed by two out of three trustees, the burden is upon the purchaser to prove the third trustee was dead. 1 Perry on Trusts (sd. ed.) sec. 411; 2 Perry on Trusts, secs. 499, 502; 2 Story Eq. Juris. (12th ed.) sec. 1280; Brennan v. Willson, 71 N. Y. 502-507.

"The authorities cited by the counsel for the company to the effect that one of several trustees may, when so authorized by his associates, act with regard to the execution of some portions of the trust, as their agent, and that when not previously so authorized, a subsequent ratification of this act by his associates may bind them all, do not embrace the facts in this case. There is no evidence of any authority to one trustee to sign a lease. The granting of a lease was an important and material act in the way of carrying out the trust under the will, requiring an exercise of the judgment and discretion of all the trustees. It was, therefore, necessary for them all to act in order to make a valid instrument.

"That one of several trustees can be entrusted by his associates with the transaction of the business of the trust may be, under certain circumstances, conceded, but those circumstances will not justify the doing of an act by one trustee on his own responsibility which is of a nature to require the deliberate discretion and judgment of all the trustees. In the case of a lease of property, such as is presented herein, the signatures of all are necessary to the validity of the paper."

The same rule is upheld by the following cases from other jurisdictions: Sloo v. Law, 3 Blatch 459; Learned v. Welton, 40 Cal. 349; Cox v. Walker, 26 Me. 504; Latrobe v. Tierman, 2 Md. Ch. 474; Mason v. Martin, 4 Md. 124; Heard v. March, 12 Cush. 580; Chapin v. First Universalist Society, 8 Gray 580; Hill v. Josselyn, 21 Miss. 597; Ham v. Ham, 59 N. H. 70; Holcomb v. Holcomb, 11 N. J. Eq. 281; Holcomb v. Coryell, Idem 476; Ridgeley v. Johnson, 11 Bard 527; Appeal of Vandiver, 42 Amer. Dec. 305; Loud v. Winchester, 52 Mich. 174; Nesbitt v. Tarbrake, 30 Penn. Sup. Ct. 460; Coleman v. Connolly, 242 Ill. 574; Perry on Trusts, vol. 2, sec. 499, 39 Cyc. 307, 364, 388-9

The text in Cyc., page 307, says:

"They (trustees) cannot, act separately, but must act as a unit, except where authority to act is given to a majority of the trustees by statute, or by the instrument creating the trust, or, possibly, except in the case of an urgent emergency. Not only is an executory contract entered into by less than the whole number of trustees unenforcible, but acts done in performance of the contract may be set aside by the non-consenting trustee or trustees."

On page 364, in treating upon the subject of conveyance by joint trustees, the statement is made:

"Where there are several trustees, all must act and join in the deed."

On pages 388 and 389, wherein the power and authority to make leases is being discussed, it is stated:

"To be valid, the lease must, where the power is expressly given, conform to whatever conditions and restrictions are contained in the instrument creating the trust, and it must be properly executed by all the trustees."

From these authorities it cannot be successfully contended that any action requiring the exercise of judgment and discretion taken by one trustee alone, where there are others, would be a valid execution of the power or authority vested in the joint trustees. It is true, as the authorities, *supra,* will show, that the action of a single trustee may be ratified, if done in the legal way, by his co-trustees, and they further show that action not requiring the exercise of judgment or discretion, but merely ministerial, may at least, under some circumstances, be exercised by one trustee alone.

The inquiry, then is, what are the rights of the parties under the facts and the law applicable to the subject? It is insisted by appellant that the paper of date, June 30, 1911, wherein one of the trustees, Union Trust Company, of Pittsburg, acknowledged the receipt from it of $1,000.00 constituted and is an acknowledgment of its right to exercise its option to purchase the property, and is an acceptance of its offer to do so made within the limitations of the option, and that although that paper is executed by only one of the trustees that the two letters of date June 20, 1911, and August 2, 1911, purporting to have been written by the

other trustee, W. Harry Brown, is a ratification of that acceptance, while appellees contend otherwise.

We do not find ourselves able to agree with appellant in its contention as to the legal effect of these writings. Manifestly the letter of June 20 could not be a ratification of a thing which had not occurred, but, if it had been dated subsequent to the receipt of the $1,000.00, it is apparent from its language that the terms which it imposes are entirely and materially different from those contained in the writing of June 30, 1911. In the latter writing the postponement of the payment of the balance of the purchase money, being $9,000.00, was for an indefinite time. It altered altogether the terms of the option contained in the lease contract; not only as to the terms of the payment, but dispenses with some of the requirements found in the option, one of which at least is the requirement on the part of appellees to furnish an abstract of title to the property.

The letter purporting to have been signed by Brown, of June 20th, fixed a definite time as to when the payments should be made, and contained terms much more certain than are contained in the writing of June 30th. The same is true as to the letter of date, August 2, 1911, purporting to have been signed by the trustee, Brown, and in addition it renews the obligation on the part of appellees to furnish an abstract of title. It is but a reiteration of the letter of June 20, as to terms.

It is a singular circumstance that we find nowhere in the record, even if it should be determined that these letters taken together are sufficient to constitute a joint proposition from the two trustees and binding on them, that the terms proposed in them were agreed to or accepted by the appellant. It being conceded as we have shown that such a contract must be jointly executed by the trustees, it would be an anomaly in the law to hold that one trustee *alone* could subsequently change and materially alter a contract, so made, as to bind the other co-trustees to the terms of the new or altered contract. This insistence is made, however, by the appellant, because it contends that the option to purchase the land was jointly, and therefore validly, executed, and that it was competent for one of the trustees alone to execute the paper of June 30th, 1911, whereby

the terms of the original option were materially changed and altered. To uphold this right to so alter and change the original contract by a single trustee would practically dispense with the rule requiring joint and united action by all the trustees, for if the alteration so executed can change the time of payment so as to bind all the trustees, it can likewise bindingly · change the amount of the purchase price or the time for the exercise of the option privilege, or any other of ·the terms of the original contract embodying the fruits of the combined judgment of all of the trustees. The original contract would thus be permitted to be so emasculated that the altered one would be a stranger to it, both in resemblance and substance and would be but substituting the combined action of all the trustees for that of one alone. We are convinced that the reason for the rule requiring the combined action on the part of the trustees would not only be frustrated, but virtually annulled, to allow the right of a single trustee to make such alterations without ratification by his co-trustee. Having determined that the option of appellant to purchase the property contained in the lease was not exercised during the life of the option, and that there had been no valid waiver of this by the co-trustee, Brown, it results that defendants failed to establish the equity in the property contended for, and they cannot therefore rely on it as a defense to this suit. To have per-. fected such right the attempted alteration by one trustee of the terms of the option, as is claimed was done under the writing of June 30, 1911, must have been ratified by the other trustee. Ratification of a contract implies the giving of consent to, or the sanctioning of, the terms of it. The trustee, Brown, according to the proof, never consented to or sanctioned the terms of the writing in question.

. The second and third points discussed before us are that the West Kentucky Ore Company is an innocent purchaser, having no notice of plaintiff's alleged equity; and, that the proof failed to show appellant's ability to pay for the property. Much research is shown in the discussion of the second point, which involves the question of notice arising from the fact of appellant's possession of the premises, and also upon the question of actual notice to one, Reed, who subsequently became a stockholder and an officer in the West Kentucky Ore Company.

A consideration of the question involved upon the second point discussed would be interesting, and one in which we would delight to engage were it not for the fact of the burdened condition of this court, and its being unnecessary in view of the conclusion reached. We will, therefore, refrain from undertaking a discussion of either of these last named points.

Some discussion is also made of the objection to the petition because of a defect of parties plaintiff, in that it is contended that the trustees had no right to appear as such, either in their own behalf or for the use and benefit of their co-plaintiff. We, think, however, in view of the fact that their conveyance of the property to their co-plaintiff demanded of them that they place it in possession of same, they had a right to, under the provisions of section 18 of the Civil Code, join as plaintiffs in this action, but if not, their having done so cannot operate to the prejudice of the defendant.

A further insistence is made that the trustees do not come into court with clean hands, because they still retain the $1,000.00 which is acknowledged in the paper of June 30, 1911. Two answers might be made to this, one being that the "clean hands" doctrine is a tool of courts of equity only and is not an instrument of the law applicable in courts of law; this being an ordinary action in the nature of ejectment, there is no room for its application. The other is, as was adverted to in a former part of this opinion, no rents or royalties have been paid by the defendant to the trustees for the four years preceding the filing of the suit, and if it did any business at all these would have amounted to a sum greater than the $1,000.00.

In view of what has been said, the trial court correctly directed the jury to return a verdict for the plaintiffs, and the judgment is affirmed.