VOGEL, Respondent, vs. DELAWARE, LACKAWANNA &
WESTERN RAILROAD COMPANY, Appellant.

*February 4—March 4, 1919.*

*Carriers: Loss of goods in transit: Liability of initial carrier: Evi-*
*dence: Value: Consular invoice: Proof of execution: Pre-*
*sumptions: Burden of proof. as to cause of loss: Declarations*
*by agent.*

1. In an action under the federal statute against the initial car-
   rier for damage in transit to goods described in the bill of
   lading as being in apparent good order, the evidence is *held*
   sufficient to show delivery of the goods to defendant at New
   York in good condition and that they arrived in Milwaukee
   in bad condition.
2. A consular invoice, duly issued and certified in accordance with
   the federal statutes, was admissible in evidence under secs.
   4148, 4164, Wis. Stats., and was at least presumptive evidence
   of the value of goods which, during the transit, had been ab-
   stracted from the package.
3. Sec. 4192, Stats., making written instruments purporting to be
   signed or executed by any person proof that they were so
   signed or executed until denied, applies to signatures of per-
   sons not parties to the action.
4. In an action under the federal statute against the initial carrier
   for damage to goods in transit, the defendant is liable for all
   intermediate carriers until the goods are received at their
   destination, including, in this case, a bonded cartage company
   which delivered the goods to the customs warehouse at their
   destination.
5. When in such an action it is shown that the goods have not
   been delivered to the consignee the presumption arises that
   they have been lost through negligence of the initial carrier
   or its agents, and the burden of proof is upon such carrier to
   show that the loss resulted from some cause for which it is
   not responsible.
6. Declarations made by an agent during the transaction of busi-
   ness by him for his principal, in relation to such business and
   within the scope of his agency, are admissible in evidence as
   against the principal.

APPEAL from a judgment of the circuit court for Milwaukee county: E. T. FAIRCHILD, Circuit Judge. *Affirmed.*

The cause was submitted for the appellant on the brief of *Pereles, Strouse & Carter* of Milwaukee and *Adams, Follansbee, Hawley & Shorey* of Chicago, attorneys, and *Nathan Pereles, Jr.,* of Milwaukee and *Samuel Adams* and *John E. Gavin* of Chicago, of counsel; and for the respondent on that of *Lines, Spooner & Quarles* of Milwaukee.

KERWIN, J.    This action was brought to recover damages for goods in transit. The court below found that the goods described in the invoice were packed at Frankfort, Germany, and that the value was as shown in the invoice; that the goods were received by defendant at Hoboken, New Jersey, in good condition and delivered in bad condition by the United States government in Milwaukee; that goods were abstracted from the package between Hoboken and Milwaukee. The evidence shows that the consignment of goods was shipped from Germany to Milwaukee, and delivered to the defendant as initial carrier at Hoboken, New Jersey. The answer admits that one Lang of the city of New York delivered to defendant at Hoboken, New Jersey, a certain consignment of freight shipped *via* defendant's connecting line to Milwaukee, Wisconsin, but denies knowledge as to value of the goods and that damage was sustained to the goods in shipment.

The record shows that defendant issued a bill of lading for four cases of linens bearing certain numbers "in apparent good order except as noted (contents and condition of contents of packages unknown)." There was no notation of bad condition. The goods were consigned to M. J. Hogan of Milwaukee, who was custom-house broker at the port of Milwaukee. It further appears from the record that only one of the cases, numbered 7815, was opened at the customs warehouse at Milwaukee by the custom-house storekeeper, whose duty it was "to keep a record of the merchan-

dise as it arrives, as it leaves, to receipt for goods arriving according to their condition." It further appears that when the goods were opened at Milwaukee package number 7815 contained one pasteboard box, which was torn out at the top, and that a number of packages were missing and the lower part of the package also was missing, and in comparing the contents with the consular invoice all of the articles in the invoice were not found in the box. The box also showed slits, indicating it had been opened. Other packages were in good condition. It also appears that the goods were consigned in bond to Hogan for clearance and distribution at the port of Milwaukee.

The contentions of defendants are: (1) that the plaintiff did not prove delivery to the defendant at New York in good condition; (2) that the plaintiff did not prove arrival at Milwaukee in bad condition; (3) that plaintiff did not prove value of the goods abstracted; (4) that plaintiff did not prove that the goods were not abstracted by the bonded cartage company at Milwaukee; (5) improper admission of evidence.

The action was brought under the federal statute commonly known as the Carmack amendment (38 U. S. Stats. at Large, 1196, ch. 176), which so far as material here provides:

"That any common carrier, railroad, or transportation company . . . receiving property for transportation from a point in one state . . . to a point in another state . . . shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass, . . . and no contract, receipt, rule, regulation, or other limitation of any character whatsoever, shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed; . . . Provided further, that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under the existing law. . . ."

The plaintiff offered in evidence a consular invoice issued and certified December 9, 1914, at Frankfort, Germany, by the American consul general. This certificate shows that the prices given in the invoice agreed with the actual market value or wholesale prices of the merchandise described in the invoice in the markets of the country at the time of exportation, and was made in pursuance of sec. 4 of the act of Congress of June 10, 1880 (21 U. S. Stats. at Large, 173, ch. 190: 2 Fed. Stats. Ann. 713), which reads as follows:

*Quadruplicate invoices.* "That sections twenty-eight hundred and fifty-three and twenty-eight hundred and fifty-five of the Revised Statutes of the United States be, and the same are hereby, so amended as to require that all invoices of merchandise imported from any foreign country and intended to be transported without appraisement to any of the ports mentioned in the seventh section of this act shall be made in quadruplicate; and that the consul, vice-consul, or commercial agent, to whom the same shall be produced, shall certify each of said quadruplicates under his hand and official seal in the manner required by section twenty-eight hundred and fifty-five of the Revised Statutes, and shall then deliver to the person producing the same two of the quadruplicates, one to be used in making entry at the port of first arrival of the merchandise in the United States, and one to be used in making entry at the port of destination, file another in his office, there to be carefully preserved and as soon as practicable transmit the remaining one to the collector or surveyor of the port of final destination of the merchandise."

The federal act under which the goods were entered—Act of June 10, 1890 (26 U. S. Stats. at Large, 131, ch. 407: 2 Fed. Stats. Ann. 611)—provides that the invoice shall contain a correct description of the merchandise and cash value and shall be made out in quadruplicate, and that the invoice shall be produced before the consul of the United States government in its office in Frankfort, and shall have indorsed thereon a declaration showing that the invoice is

in all respects correct and true, and provides (sec. 5) for a declaration accompanying the invoice as follows:

"That whenever merchandise imported into the United States is entered by invoice, one of the following declarations, according to the nature of the case, shall be filed with the collector of the port, at the time of entry by the owner, importer, consignee, or agent; which declaration so filed shall be duly signed by the owner, importer, consignee, or agent, before the collector, or before a notary public or other officer duly authorized by law to administer oaths and take acknowledgments, who may be designated by the secretary of the treasury to receive such declaration and to certify to the identity of the persons making them, under regulations to be prescribed by the secretary of the treasury; and every officer so designated shall file with the collector of the port a copy of his official signature and seal . . ."

Sec. 2855, R. S. U. S. (2 Fed. Stats. Ann. 660) provides:

*Indorsement upon invoice.* "The person so producing such invoice shall at the same time declare to such consul, vice-consul, or commercial agent the port in the United States at which it is intended to make entry of merchandise; whereupon the consul, vice-consul, or commercial agent shall indorse upon each of the triplicates a certificate, under his hand and official seal, stating that the invoice has been produced to him, with the date of such production, and the name of the person by whom the same was produced, and the port in the United States at which it shall be the declared intention to make entry of the merchandise therein mentioned. The consul, vice-consul, or commercial agent shall then deliver to the person producing the same, one of the triplicates, to be used in making entry of the merchandise; shall file another in his office, to be there carefully preserved; and shall, as soon as practicable, transmit the remaining one to the collector of the port of the United States at which it shall be declared to be the intention to make entry of the merchandise."

Sec. 2862, R. S. U. S. (2 Fed. Stats. Ann. 662) provides:

*Consuls to exact proof of invoice.* "All consular officers are hereby authorized to require, before certifying any invoice under the provisions of the preceding sections, satis-

factory evidence, either by the oath of the person present-
ing such invoices or otherwise, that such invoices are correct
and true.    In the exercise of the discretion hereby given, the
consular officers shall be governed by such general or special
regulations or instructions as may from time to time be
established or given by the secretary of state."

Due proof was made in accordance with the foregoing
statutes.

Other federal statutes provide penalties for failure to
properly perform duties and making of false invoices.    All
of the federal enactments show that the duty prescribed is
official and the public documents made and kept pursuant to
official duty and are admissible in evidence.    The Wisconsin
statutes made such documents admissible in evidence.    Secs.
4148, 4164, Stats.

Our statute, sec. 4192, also makes written instruments
purporting to be signed or executed by any persons proof
that they were so signed or executed until denied.

Counsel for appellant contends, however, that this statute
last referred to does not apply to signatures of persons not
parties to the action.    This court has held otherwise.    *Mil-
waukee T. Co. v. Van Valkenburgh,* 132 Wis. 638, 112 N.
W. 1083; *Parroski v. Goldberg,* 80 Wis. 339, 50 N. W. 191;
*Schlei v. Struck,* 109 Wis. 598, 85 N. W. 430; Jones, Ev.
§ 520; 17 Cyc. 306; 3 Wigmore, Ev. § 1630.

The value of the goods in this case is established, at least
*prima facie,* by the consular invoice.    Sec. 2852, R. S. U. S.
(2 Fed. Stats. Ann. 659), which reads as follows:

"When any merchandise is admitted to an entry upon in-
voice, the collector of the port in which the same is entered
shall certify the same under his official seal; and no other
evidence of the value of such merchandise shall be admitted
on the part of the owner thereof, in any court of the United
States, except in corroboration of such entry."

The defendant receipted for case number 7815 in apparent
good condition, and the proof was ample to show that it was
in bad condition when received at the custom house in Mil-

waukee, and that it had been opened and some of the goods abstracted.

It is also contended by appellant that the Quick Delivery Company, which had charge of the goods before delivery to Hogan, was not the agent of the defendant. This contention is unsound. The defendant is liable for all intermediate carriers until the goods are received at their destination. The goods were delivered by the Quick Delivery Company, as agent of the defendant, to Hogan, and Hogan receipted for them in bad order. *Fasy v. International N. Co.* 77 App. Div. 469, 79 N. Y. Supp. 1103; affirmed on appeal, 177 N. Y. 591, 70 N. E. 1098; *Wegener v. C. & N. W. R. Co.* 162 Wis. 322, 156 N. W. 201; *Atlantic C. L. R. Co. v. Riverside Mills,* 219 U. S. 186, 31 Sup. Ct. 64.

The proof in this case was ample to make out a *prima facie* case under the federal decisions as well as our own. *Laughlin v. C. & N. W. R. Co.* 28 Wis. 204; *Tradewell v. C. & N. W. R. Co.* 150 Wis. 259, 136 N. W. 794; *L. Struebing Co. v. Merchants D. T. Co.* 142 Wis. 657, 126 N. W. 21; *Uber v. C., M. & St. P. R. Co.* 151 Wis. 431, 138 N. W. 1.

It is further contended that the letters of McDowell to Hogan respecting the subject matter of the shipment were not competent, because McDowell's evidence was not a part of the *res gestæ,* hence not admissible, and that McDowell had no authority to bind his principal by his declarations. The declarations made by the agent in this case were made during the transaction of business by the agent for the principal and in relation to such business and within the scope of his agency, and we are of opinion that the evidence was admissible. Jones, Ev. § 255; *Dean v. T., St. L. & W. R. Co.* 148 Mo. App. 428, 128 S. W. 10; *Quanah, A. & P. R. Co. v. Galloway* (Tex. Civ. App.) 154 S. W. 653; *Louisville & N. R. Co. v. E. J. O'Brien & Co.* 168 Ky. 403, 182 S. W. 227; *Pennsylvania R. Co. v. Orem F. & P. Co.* 111 Md. 356, 73 Atl. 571; *Hill v. Adams Exp. Co.* 77 N. J. Law,

19, 71 Atl. 683. But whether the letters of McDowell were competent or not is immaterial. The evidence, even if incompetent, was not prejudicial, because the case was tried by the court, the evidence undisputed and ample to make a *prima facie* case without the McDowell letters.

In the instant case there can be no doubt but that a *prima facie* case was made on all points necessary to sustain the findings of the court below. *St. Louis, I. M. & S. R. Co. v. Hudgins P. Co.* 118 Ark. 398, 177 S. W. 400; *National E. Co. v. G. N. R. Co.* 137 Minn. 217, 163 N. W. 164.

In *Galveston, H. & S. A. R. Co. v. Wallace,* 223 U. S. 481, 32 Sup. Ct. 205, which case arose under the Carmack amendment, at page 492 the court said:

"Thus considered, when the holders of the bills of lading proved the goods had not been delivered to the consignee, the presumption arose that they had been lost by reason of the negligence of the carrier or its agents. The burden of proof that the loss resulted from some cause for which the initial carrier was not responsible in law or by contract was then cast upon the carrier. The plaintiffs were not obliged both to prove their case and to disprove the existence of a defense. The carrier and its agents, having received possession of the goods, were charged with the duty of delivering them, or explaining why that had not been done. This must be so, because carriers not only have better means, but often the only means, of making such proof. If the failure to deliver was due to the act of God, the public enemy, or some cause against which it might lawfully contract, it was for the carrier to bring itself within such exception. In the absence of such proof the plaintiffs were entitled to recover, and the judgment is affirmed."

We are convinced that the judgment below is right and should be affirmed.

*By the Court.*—Judgment affirmed.