Davey vs. The City of Janesville.

DAVEY, Respondent, vs. THE CITY OF JANESVILLE, Appellant.

*October 15 — November 5, 1901.*

*Municipal corporations: Personal injuries: Qualifications of jurors: Taxpayers: Estoppel: Expert testimony: Hypothetical questions: Objections should be specific: Amendment of special charter: Ordinance adopting part of general charter: Judicial notice: Claims: Disallowance: Appeal: Pleading: Premature notice of trial:. Waiver: Undertaking: Damages.*

1. In an action against a city for personal injuries, the plaintiff may ask jurymen whether the fact that as taxpayers they would be called upon to pay a part of any judgment recovered by plaintiff would influence their verdict.

2. Signifying satisfaction with the jury as constituted estops a party from questioning on appeal the correctness of a ruling of the trial court overruling his challenge of a juror.

3. An objection to an hypothetical question should, upon request, be made specific and the exact nature of the defect in the question pointed out, in order to give to the court an opportunity to pass upon the precise question involved and to the opposing counsel an opportunity to remove the objection or supply the defect by other testimony.

4. In an action for personal injuries a physician who had attended the plaintiff professionally after the accident, and had testified to her condition and to the objective symptoms observable, is *held* to have been properly allowed to state his opinion as to the cause of her present condition, based upon what he saw of her condition and upon the facts that he had testified to.

5. Subd. 9, sec. 31, art. IV, Const., prohibits the legislature from amending the charters of cities, and sec. 32 provides for the adoption of general laws for that purpose. Secs. 925–1 to 925–269, Stats. 1898, embody a general charter law, and sec. 926 provides that any city operating under a special charter may by ordinance adopt any chapter, section, or subdivision of such general charter in addition to or in lieu of the provisions of its special charter, and that such ordinance shall operate to that extent as an amendment of such charter. *Held,* that the court will take judicial notice of the amendment of a special charter by the adoption of such an ordinance.

6. Where pursuant to law an appeal has been taken to the circuit court from the disallowance of a claim by the common council of a city,

it is not necessary that issue should be joined in order that the case may be noticed for trial. If no formal pleadings are required by the trial court, the claim serves as a complaint and the law implies the fiction of a general denial.

7. The irregularity of a premature notice of trial is waived if, after the objection is overruled, the party goes to trial on the merits.

8. Sec. 925–60, Stats. 1898, provides for the giving of an undertaking on appeal to the circuit court from the disallowance of a claim against a city by the common council, "conditioned for the faithful prosecution of such appeal and the payment of all costs that shall be adjudged against the appellant." *Held*, that an undertaking which followed the exact words of the statute, but added after the word "appellant" the words "by the court," was sufficient.

9. In an action for personal injuries caused by a fall on a defective sidewalk, a recovery of $5,000 damages is *held* not excessive, the evidence showing plaintiff to be in a very bad condition, with small chances of improvement.

APPEAL from a judgment of the circuit court for Rock county: B. F. DUNWIDDIE, Circuit Judge. *Affirmed.*

The plaintiff brings this action to recover damages for injuries alleged to have been sustained by her by reason of the insufficiency and defective condition of a certain sidewalk in the city of *Janesville.* On July 19, 1900, the plaintiff presented her claim to the common council of said city, setting out at length her claim for damages, and describing the alleged insufficiency in the sidewalk, its location, and the manner in which the accident happened. To this she annexed a copy of her notice to the city of the injury sustained. The council failed to pass upon the claim within sixty days after its presentation, whereupon the plaintiff took her appeal to the circuit court for Rock county. She presented an undertaking which recited that she would "well and truly pay all costs that shall be adjudged against the said appellant, *Anna E. Davey,* by the court." Her appeal, with a proper return, was duly filed in the circuit court, and the

action was noticed for trial at the April term, 1901.  At
that time the defendant made a motion to strike the case
from the calendar on the ground that no issue of law or fact
had been joined therein, and for the further reason that the
court had no jurisdiction of the controversy between the
parties as an action, and also because the undertaking con-
tained words of limitation not warranted by law, in that the
words " by the court " must be held to apply to the circuit
court alone.   The motion was denied and duly excepted to.
The court then ruled that the claim presented to the coun-
cil should stand for a complaint.   The defendant answered
by a general denial, and alleged contributory negligence.

During the progress of impaneling the jury, the plaint-
iff's counsel was allowed to ask several jurymen who were
residents of the city of *Janesville*, over defendant's objection,
whether the fact of residence, and liability to pay taxes in
case a judgment was obtained for plaintiff, would influence
them in arriving at a verdict.   The juror Heise, upon exam-
ination by defendant's counsel, testified as follows:

" *Q.* You say you thought you could render an impartial
verdict.   I will ask you whether the fact that a woman is
in a very bad, distressing condition,— whether in that case
your sympathies would influence you or not ?   *A.* Well, I
don't know.   If she had been hurt so she suffered, my sym-
pathies would be with her.   *Q.* Do you think it would in-
fluence your verdict any?   *A.* Yes, sir.   *Mr. Ruger:* Your
honor, I suggest that that is a proper ground of excuse.
*Mr. Jeffries:* I think not.   His answer is, if the facts show
that she is entitled to it.   *Court:* I don't think this is a
ground for excuse.   It is a proper question to ask.   *Mr.
Ruger:* We ask that the juror be excused.   *Court:* You are
not conscious of any bias or prejudice either for or against
the plaintiff or against the city, are you?   *A.* No, sir.   *Court:*
Do you believe you could try the case fairly and impartially
upon the testimony?   *A.* Yes, sir.   *Mr. Jeffries:* We are satis-
fied with the jury.   *Court:* Are you satisfied with the jury,
Mr. Ruger?   *Mr. Ruger:* Yes, sir."

During the trial the following question, directed to the doctor who attended the plaintiff, was objected to by defendant's counsel:

" *Q.* Assuming that on the night of the 14th of April, 1900, this plaintiff about eight o'clock in the evening fell on the sidewalk here in the city of *Janesville*, at the time she fell wrenching her back and neck and causing injury to her hip, and she returned home, and afterwards came to your office, and then you saw upon your examination,— you saw the condition she was in,— and then the condition which you have testified to here, and assuming that she was well prior to that time, and had been for many years, what, in your judgment, was the cause of her present condition? (Objected to as incompetent.) *Plaintiff's Counsel:* I ask the counsel if he has any changes to suggest in that question,— anything that is not included which should be included, or anything that is put in that is not in evidence,— that he point it out specifically. *Defendant's Counsel:* I have no suggestions to make as to how you should ask your question. (Overruled. Exception by defendant.) *A.* I should say from the severe injury either to the sciatic nerve or the spinal cord,— the injury on the night of April 14th. As far as I know, that is my judgment."

Somewhat similar questions directed to other medical experts were objected to, but were overruled. The jury rendered a verdict for plaintiff for $5,000. A motion for a new trial was denied, and from a judgment for plaintiff the defendant has appealed.

*F. C. Burpee*, city attorney, and *Wm. Ruger*, of counsel, for the appellant, contended, *inter alia*, that if an ordinance adopting the provisions of the general charter exists, the court is not apprised thereof by either pleadings or proof and cannot take judicial notice that such is the fact. *Stittgen v. Rundle*, 99 Wis. 78, 80; *Fitts v. Cream City R. Co.* 59 Wis. 323, 327; *Pettit v. May*, 34 Wis. 666, 674; *Quint v. Merrill*, 105 Wis. 406, 408; *Horn v. C. & N. W. R. Co.* 38 Wis. 463, 468; *Janesville v. M. & M. R. Co.* 7 Wis. 484, 490; Stats. 1898, sec. 925—69, note.

Davey vs. The City of Janesville.

For the respondent there was a brief by *Fethers, Jeffris & Mouat*, and oral argument by *M. G. Jeffris* and *M. O. Mouat*.

BARDEEN, J.  Several jurymen who were residents and taxpayers in the city of *Janesville* were asked whether the fact that they might be called upon to pay a part of any judgment recovered by plaintiff would influence their action in arriving at a verdict.  They answered that it would not. Defendant's counsel argue that this kind of an examination might have a tendency to cause jurors to lean towards the plaintiff's side of the case, in order to prove that they were not affected by their slight financial interest in the result. At common law the authorities are uniform that taxpayers of a city, in an action against it, might be excluded from the jury *ex mero motu*, or upon challenge for this cause, on the ground that they might be responsible for a ratable proportion of whatever verdict might be rendered against the city, and to that extent pecuniarily interested in the result of the suit.  Thompson & M. Juries, § 179.  This rule has been changed by statute in most states, probably on the ground that the interest is so inconsiderable as not to be likely to influence individual action.  We see no reason why a plaintiff, who is the most likely to be affected by the interest of the juryman, may not make the inquiries mentioned, with a view of establishing a foundation for the exercise of the right of peremptory challenge, if for no other purpose.  The fear that such examination would be likely to arouse a tendency to lean the other way is more imaginary than real.

The juror Heise testified that the fact that a woman was in a bad and distressing condition, and had been hurt so she suffered, would arouse his sympathies and would influence his verdict.  He also said that he believed he could try the case impartially upon the testimony.  Notwithstanding this apparent contradictory condition of the juror's mind, defendant's challenge was overruled.  At the close of the colloquy

both sides signified that they were satisfied with the jury. This was a waiver of the formal objection to the juror mentioned, and effectually foreclosed the defendant from urging the objection here made, even if the ruling of the court thereon were deemed erroneous. *Emery v. State,* 101 Wis. 627.

The objection to the hypothetical question set out in the statement was that the question was incompetent. Defendant's counsel declined to make his objection more specific, and did not advise the court of the precise grounds of his objection. The testimony sought to be elicited was not incompetent. If the form of the question was bad,— if it omitted important elements necessary to give the jury a proper understanding of the basis of the doctor's testimony,— it was the duty of counsel to point out to the court the missing elements, and make his objections specific enough to advise the court of the alleged imperfections in the question. This he failed to do, and this fact alone was sufficient to warrant the court in overruling the objection. But, even if this were not so, still we think the question was proper. The witness was one who had attended the plaintiff professionally after the accident. He had theretofore testified to her condition, and to the objective symptoms observable. He was then asked to state his opinion as to the cause of her present condition, based upon what he saw of her condition, and upon the facts that he had testified to. We are unable to perceive any just cause for complaint against either the form or the substance of the question, as directed to the attending surgeon. What has been said regarding the necessity of making objections specific applies to the complaint made against the questions put to the other medical experts. The criticism now is that such questions assumed facts not proven, yet, when appealed to by the other side to point out the objectionable or unwarranted assumptions, counsel declined to make any suggestion or state more fully his objec-

tion. It was only fair that the trial judge should have an opportunity to pass upon the precise question involved, and that the exact nature of the defect in the question should be pointed out, and also that the opposing counsel should have the opportunity to remove the objection or supply the defect by other testimony. 3 Jones, Ev. § 896.

The most important question involved in this appeal arises upon the motion made to dismiss the proceeding for want of jurisdiction. The charter of the city of *Janesville*, said to have been in force at the time this action was commenced, was ch. 221, Laws of 1882. The published law contained no requirement that a person having a claim for damages against the city for injuries on its streets should present the same to the council, and no provision for an appeal therefrom to the circuit court. This case was commenced by the presentation of plaintiff's claim to the council. The council failed to take action within sixty days, and thereupon she gave an undertaking and took an appeal to the circuit court. Such proceedings were presumably taken pursuant to the requirements of secs. 925—58 to 925—60, Stats. 1898. Nothing appears in the claim filed, nor was any proof offered on the trial, going to show that the city of *Janesville* had ever adopted the provisions of the general charter law above referred to. Under this branch of the case, defendant's entire argument is based upon the assumption that this court is bound, in the determination thereof, by the law as it appears in the special charter of the city. We are told that the common council of the city of *Janesville* is not an inferior court or tribunal from which an appeal lies to the circuit court, and hence the attempt to get into court by the presentation of a claim and an appeal from the council is not a proceeding warranted by any law of this state. Under the view we have taken of this case, we need not consider the effect of appearance by the city and subsequent litigation of the issues presented. Whether such appearance would or would

not confer jurisdiction under the circumstances it is not necessary to decide. The main point raised is of importance, and is not unattended by difficulties. Stripped to the skeleton, it is whether this court may or will take judicial notice of the adoption by cities of portions of the general charter law.

Courts are bound to take notice of the public statutes of the state wherein they are held. There is no rule of evidence better established than this, and the only differences of opinion that have arisen under it are in determining what are public statutes, within its meaning. 1 Jones, Ev. § 113. The city charter of *Janesville* is a general law. *Clark v. Janesville,* 10 Wis. 136. Following the rule above stated, it would seem that if, by any process deemed legal, such charter has been amended, this court will be obliged to take judicial notice of such change. Since the amendment to the constitution in 1892 forbidding the legislature from amending the charters of cities (subd. 9, sec. 31, art. IV), no power has existed to make such amendment, except that it be done by general laws having uniform operation throughout the state, pursuant to the provisions of sec. 32, art. IV. This section provides that "the legislature shall provide general laws for the transaction of any business that may be prohibited by section 31." Presumably in obedience to this mandate, the legislature adopted the general charter law (secs. 925—1 to 925—269, Stats. 1898), and provided that cities acting under special charters might adopt the whole or some specific part of it in lieu of existing provisions. Sec. 926, Stats. 1898. Such adoption was to be upon published notice, by ordinance, and in accordance with certain requirements not material to be here mentioned. It also said, "and when adopted as herein prescribed such ordinance shall operate to that extent as an amendment of such charter." *Adams v. Beloit,* 105 Wis. 363, establishes the constitutionality of such legislation, and *State ex rel. Boycott v. La Crosse,*

107 Wis. 654, mentions certain of the limitations attending municipal action.

We have, then, the power to set in motion the machinery of amendment lodged in common councils, and the fact that such amendments are to be effectuated by ordinances duly adopted by local boards, and when so adopted to have the effect of a general law, or, rather, the general law is to go into effect in a given locality by virtue of certain prescribed municipal action. Right here the defendant appeals to another rule adopted in this state,— that this court is not bound to take judicial notice of city ordinances or mere local by-laws. *Pettit v. May,* 34 Wis. 666; *Horn v. C. & N. W. R. Co.* 38 Wis. 463; *Stittgen v. Rundle,* 99 Wis. 78. The situation is anomalous. The eccentric character of the situation arises from the power vested in local authorities to take action equivalent in effect to the passage by the legislature of a direct amendment, as was done prior to the amendment. Under these circumstances it seems clear that there is but one thing this court can do. It being admitted that the adoption of the proper ordinance operates as an amendment of the charter to that extent, under the rule that the court must take judicial notice of the charter of the city it must also take such notice of all amendments as are made thereto under due forms of law. Any other conclusion might lead to confusion or result in a practical denial of justice. When a course of procedure, as in this case, indicates action under an amended charter, the court may pause to ascertain the fact, and then govern its judgments accordingly. If the amendment has the force of a general law, as it seems to us it must, then it was not necessary to plead it. It may be somewhat burdensome to this court to ascertain the fact of amendment, but we may not shrink from the performance of that duty for such reason. This situation results from the anomaly of permitting amendments to be made in the manner stated, but so long as this is deemed

lawful the attendant burdens must be shouldered and carried. The legislature may relieve the difficulty by appropriate legislation providing for filing with the proper officer a certificate of municipal action in that regard, and publication thereof with the session laws.

Another objection urged is that the case was noticed for trial without any issue having been joined, and hence should have been stricken from the calendar. The law provides many instances of appeals from the action of county, city, or other municipal bodies, and in no instance that we are aware of has the court denied the right to notice the case for trial because no issue had been made up. In all such cases, if no formal pleadings are required by the trial court, the law implies the fiction of a general denial, and the litigation is not delayed or postponed because a formal answer has not been interposed. If the rule contended for by defendant should prevail, a default action appealed from justice's court could not be noticed for trial by the plaintiff until the defendant had come in and made up an issue. Such has never been considered the rule, so far as the experience of the writer of this opinion goes. But, if this were not so, the irregularity of a premature notice of trial is waived if after the objection is overruled the party goes to trial on the merits, under the rule laid down in *Mills v. Nat. F. Ins. Co.* 92 Wis. 90. This is what the defendant did in this case, and it cannot now be heard to urge the ruling of the trial court as error.

The objection to the sufficiency of the undertaking is finical. Sec. 925—60 provides for the giving of an undertaking "conditioned for the faithful prosecution of such appeal and payment of all costs that shall be adjudged against the appellant." The undertaking in suit follows the exact language of the statute, but adds after the word "appellant" "by the court." We are informed that, as the appeal was to the circuit court, these words must be considered as

a limitation to only pay such costs as may be adjudged by
that court. The point is too fine. It requires no effort at
construction to hold that the undertaking means that the
plaintiff will pay all costs adjudged by any court given
power in the premises. This is in conformity to the ruling
in *West v. Eau Claire*, 89 Wis. 31. It may not be improper
to remark, however, that no good reason is perceived why
attorneys, in drawing papers of this kind, should not follow
the statute as written, and not attempt to graft on condi-
tions or limitations not found in the law.

A further suggestion is made that the verdict is clearly
excessive, when the results justly attributable to plaintiff's
fall, as shown by competent testimony, are considered. Just
what those results were is one of the litigated questions in
the case. The evidence showed plaintiff to be in a very
bad condition, with small chances of improvement, and that
this condition was attributable to her fall. While the amount
of the verdict is large, it is not so disproportionate to the
injury sustained that we feel warranted in disturbing it.

*By the Court.*— The judgment is affirmed.