Zigler, Respondent, vs. Kinney, Administratrix, and another, Appellants.
Same, Administrator, Respondent, vs. Same, Appellants.

*February 26—May 13, 1947.*

For the appellants there was a brief by *Jeffris, Mouat, Oestreich, Wood & Cunningham,* and oral argument by *Otto A. Oestreich* and *Harry F. Knipp,* all of Janesville.

For the respondent there was a brief by *Thronson & Roethe* of Janesville, and oral argument by *John M. Roethe* and *S. J. Thronson.*

FOWLER, J.   Two cases growing out of an automobile collision on a highway were submitted to a jury for decision upon a single special verdict.   In one case Harry M. Zigler sought recovery for damages to an automobile owned by him which was injured in the collision allegedly through the negligence of George William Kinney, driver of the other car.   In the other case, Harry M. Zigler, as administrator of the estate of his son, William H. Zigler, sought recovery for the personal injuries of the son received in the collision, and for the damages sustained by his parents through his death which later resulted from the injuries sustained in the collision, allegedly caused by the negligence of Kinney.   Kinney died subsequent to the collision but not as a result of injuries received in the collision. Kinney was found by the jury to have been causally negligent in driving his car as to lookout, management and control of his car, and for driving his car on the left side of the road.   The jury found that William H. Zigler, the deceased who was driving the Zigler car, was driving at a negligent rate of speed, but that this negligence was not causal.   They also found that the deceased William H. Zigler was not negligent as to lookout or management and control.   The comparative negligence of the drivers was fixed by the jury at five per cent for Zigler and ninety-five per cent for Kinney.   Judgment was entered against Kinney's administratrix and insurer for the full amount of the damages assessed.

Appellants contend that the deceased Zigler's negligence as to speed was causal as matter of law because he was driving at

such speed as he approached the place of collision that he could not stop his car within the distance that he could see ahead.

Zigler was driving east on an arterial highway. He was approaching a side road leading off to his right, with a sign at the right side of the arterial indicating the presence of the side road. From a scaled map in evidence it appears that he was on a grade, the extreme elevation of which was one hundred fifty feet west of the center of the side road. At three hundred fifty feet west of the tip of the grade the total elevation to the tip was five and five-tenths feet and the average elevation was one and six-tenths feet in one hundred. Kinney was also approaching the side road on an upgrade. At three hundred fifty feet east of the tip the total elevation to the tip was about seventeen feet and the average elevation four and eight-tenths feet in one hundred. There is no evidence as to how far ahead of his car Zigler could see as he approached the tip of the grade or how far he was from the Kinney car when it first came in view, except as it may roughly be deduced from these figures and the probable elevation of his eyes from the surface of the road, and of these facts the jury could as well judge as this court, and except as it may be deduced from what other occupants of the car did see. Two witnesses were in the car with Zigler. According to them Zigler was driving forty to forty-five miles per hour. By their testimony they first saw the Kinney car about the time they reached the tip of the grade, one hundred fifty feet from the center of the side road. However, before reaching that point they saw by its lights that a car was coming. There is no testimony in what distance the Zigler car could be stopped going at forty-five miles per hour. By the table prepared by the highway department, at forty-five miles per hour a car can be stopped in one hundred fifteen feet; and at fifty miles per hour in one hundred sixty-five feet. A witness who was in the Kinney car testified that as the Zigler car came over the tip of the grade, it was going fifty miles per hour "or better." If so, it may be inferred it could not be stopped within one hundred

sixty-five feet. As Zigler was going downgrade after reaching the tip the distance for stopping would be more than on a level road. Sec. 85.40 (4), Stats., provides that "in traversing intersections" the speed of a car shall not be greater than that in which it can be stopped within one half the distance the driver can see approaching traffic, with the exception that this rule does not apply to a driver on an arterial where a driver on an intersecting road is "compelled to stop before entering the intersection." A photograph in evidence shows that a stop sign was posted on the side road. This required a driver on that road to stop. Sec. 85.69. Thus sec. 85.40 (4) does not here apply. However, in *Lauson v. Fond du Lac,* 141 Wis. 57, 123 N. W. 629, it was held that when the view is obstructed the speed should be so reduced that a car can be stopped within the distance the driver can see. Although the distance to which the view in the *Lauson Case* was short, the principle of the case applies as well on grades where obstructions to view exist as here as when the view ahead is short. The rule is a rule of common law and, although under the exception of sec. 85.40 (4) that section does not apply, the rule of the *Lauson Case* does apply. The jury was here instructed under the rule of that case. This rule has been consistently adhered to by this court as nearly twenty cases cited in Shepard's Wisconsin Citations show. The general rule as to speed makes it unlawful for a person "to operate any vehicle upon a highway carelessly and heedlessly, . . . or without due caution and circumspection . . . or without due regard to the traffic. . . . and any other condition of whatever nature then existing." Sec. 85.40 (1). Under this statute it was the duty of the deceased Zigler to use due care as to speed in view of the existence of the intersection he was approaching, the fact that his view ahead as he approached the crest of the grade was obstructed, and that an automobile which he could not yet see was approaching, the driver of which might be turning onto the side road. Under this statute the rule of the *Lauson Case* required that as he

neared the intersection he should be maintaining a speed such that he could stop in time to avoid injury to a person who might with due care be negotiating a left turn onto the side road. Kinney was intending to make such turn. If Zigler was not exercising due care as to speed under the conditions present, and Kinney was exercising due care in turning under the circumstances present, and Zigler could have stopped before reaching the Kinney car had he been maintaining proper speed, then Zigler's negligence as to speed was causal. If he was not Zigler's speed was not causal. The jury found that Kinney was not exercising due care. If that finding is supported by the evidence, then the jury's finding that Zigler's speed was not causal is supported by the evidence and the plaintiff is entitled to judgment for the whole amount of the verdict.

From the evidence the jury might properly have believed that the left front corners of the two cars collided south of the center of the arterial on Zigler's side of the road at a point forty-seven feet east of the center of the side road, and one hundred ninety-five feet east of the tip of the grade, as indicated by a gouge mark on the concrete of the arterial made by the left wheel of the Zigler car coming off and the drum dropping. This gouge mark was south of the center of the arterial. At all times prior to the collision Zigler's car was entirely on its own side of the road. The speed of the Kinney car was about forty miles per hour as it approached the intersection and was reduced to twenty-five miles per hour when he started to turn. When the Zigler car reached the tip it was in plain sight of Kinney, and its lights were visible before that. The Kinney car until then was on the north, its own half of the road. When it turned left it invaded Zigler's half of the road. The Zigler car at no time until after the collision invaded the north half of the road, so that had Kinney not turned to the left the cars would have passed without colliding.

Appellants contend that the finding of the jury that Kinney was causally negligent is not supported by the evidence be-

cause, as they claim, he was undisputably making a left turn onto the side road. Whether Kinney was so negligent and whether Zigler's speed was causal both depend on undisputed physical facts and the testimony of three witnesses who were the only persons who saw what occurred except the two drivers, both of whom died before the trial. As their testimony is the crucial point of the case, we here give a summary of it so far as it bears on these questions. Mrs. Quammen was riding with Kinney. They were driving west. She testified as follows:

"Before we got to the scene of the accident I suggested we turn around and go back, and then noticed a sign before we started to turn."

That sign was three hundred fifty feet from the center of the side road. The witness continued:

"I saw Kinney turn his car to the left. I looked back [east] and looked forward [west] both and there were no lights coming at that time. I did not see whether Kinney made an observation."

"*Q.* What happened after he turned his car to the left at this point? *A.* That was the time when we or rather I did if he didn't, when I hollered 'look out.'

"*Q.* What happened then? *A.* Then is when he tried to turn back. . . . We had slowed down to perhaps twenty-five miles per hour.

"*Q.* Did you see the lights of this approaching car before you saw the automobile itself? *A.* Yes, I did. We were just to the center of the line as Kinney attempted to turn the car to the right after turning to the left; just starting on the center line at that time. We were driving on our right-hand side of the highway coming up this incline. At the time of the impact the Kinney car was facing west.

"*Q.* Was it facing to the north too as well as to the west? *A.* No, not exactly. At the impact I wouldn't say that the Kinney car was going over eighteen or twenty. The left fender was along the side, a part of the side, a part of the

Kinney car was struck in the impact. The left front of the Zigler car collided with his automobile."

On cross-examination Mrs. Quammen testified:

"*Q*. And at the time when he [Kinney] started to turn . . . was there any automobile lights coming in the opposite direction? *A*. They just popped up all of a sudden. . . . That is when I said 'look out there is a car coming.'

"*Q*. And the accident occurred within seconds after that? *A*. Yes that is right."

Richard Walsh was riding with Zigler. He and Norman Wiltse sat on the front seat with him. He testified that he first saw the Kinney car when the Zigler car reached the tip of the grade, but could see the headlights, the ray from the lights before that. The Kinney car was then just starting across the center of the arterial. Kinney proceeded a little across the center and started to turn back, and then the collision occurred. The right wheel of the Zigler car was then on its own side of the road.

Norman Wiltse testified that when the Zigler car reached the tip of the grade the Kinney car was starting to turn left and was not going very fast. The Kinney car was three fourths on the Zigler side of the road. The Kinney car started back to its own side of the road immediately as the Zigler car reached the tip of the grade. Thus Mrs. Quammen and both Walsh and Wiltse testified in effect that when the Zigler car reached the tip of the grade Kinney started to turn.

From all this the jury might properly infer that the lights of Zigler's car were in view of Kinney before Zigler reached the tip of the grade and when Kinney turned left. Kinney started to turn left at the side-road sign three hundred fifty feet from the center of the side road, and was going not more than twenty-five miles per hour. From this we consider that the jury might properly infer that Kinney had ample opportunity

in the exercise of ordinary care to make his turn onto the side road without getting into Zigler's line of travel either by stopping his car or keeping straight on till Zigler had passed him and that ordinary care required him to do one or the other. Thus they might properly infer both that Kinney was negligent as to lookout, management of his car, and invasion of Zigler's half of the road, and that Zigler's speed was not causal. We consider that the findings of the jury are supported by the evidence.

Appellants also claim that the $1,500 damages awarded for Zigler's pain and suffering and of $2,000 damages for loss of contributions to his parents after he should arrive at the age of twenty-one years were excessive. We think that the trial court properly allowed these damages. While the deceased's injury was a broken arm and he lived only thirteen days after receiving his injuries, the injuries by reason of the nature of the fracture and the course of treatment were excruciatingly painful. The son, although only twenty years of age at the time of his injury, was earning wages of over $200 a month as a timekeeper. He was living alone with his parents and was affectionate and generous toward them. The accident occurred August 4, 1944, and Zigler would have become twenty-one years of age January 27, 1945. The allowance of $1,100 for loss of earnings for nearly five months to the parents until he would arrive at the age of twenty-one years is not attacked as excessive. We think that under all the circumstances the jury might properly make the allowances that they did.

Objection is made that the court permitted evidence that Mr. Kinney said, about ten minutes after the accident, that the collision "was his fault and that he had insurance." This is complained of as error under the rule of *Hilton v. Hayes*, 154 Wis. 27, 30, 141 N. W. 1015. The statement there made by a defendant to a plaintiff was: "Well, you were hurt here and entitled to damages, and I would like to see you get them." To this the plaintiff said: "Then you have insurance." And the

defendant replied: "Oh, yes, it doesn't make any difference to us." The defendant making the statement was not present when the accident involved occurred. The statement and circumstances there involved are so different from those here that we think the court's ruling there made that the statement was not an admission of fact against interest is not here applicable. In *Olk v. Marquardt,* 203 Wis. 479, 485, 234 N. W. 723, a defendant in a case to recover damages for injuries received in an automobile collision offered to prove that the plaintiff had pleaded guilty to a charge of reckless driving based upon his conduct respecting the accident involved. The objection was overruled. This court stated: "If the fact is as the record showed, that defendant did make an admission against interest either by statement or by doing something, such as paying a fine and costs, it would be material and competent." With equal reason a statement of Kinney that the collision was his fault would also be "competent and material." The general rule is thus stated in 4 Wigmore, Evidence, p. 2, sec. 1048: "The statements made out of court by a party-opponent are universally deemed admissible," and "anything said by the party-opponent may be used against him as an admission, provided it exhibits the quality of inconsistency with the facts now asserted by him in pleadings or in testimony." Admissions implied from conduct are admissible in a criminal case such as acts tending "to show a consciousness of guilt, : . . flight, living under an assumed name, attempt to escape, resistance of arrest, concealment, and failure to appear for trial" by one suspected or charged with crime. 1 Jones, Evidence (4th ed.), p. 537, sec. 287. With equal reason an express admission of fault is admissible in a civil case. We perceive no error in the admission of Mr. Kinney's admission of fault in the instant case.

*By the Court.*—The judgments of the circuit court are affirmed.