DAIRYLAND CO-OPERATIVE CHEESE ASSOCIATION, Plaintiff and Respondent, vs. BRIGGS TRANSFER COMPANY, Defendant and Appellant: SPECTOR MOTOR SERVICE, INC., Interpleaded Defendant and Appellant.

*May 8—June 3, 1958.*

440

For the appellant Briggs Transfer Company there was a brief by *Schubring, Ryan, Petersen & Sutherland,* and oral argument by *James C. Herrick,* all of Madison.

For the appellant Spector Motor Service, Inc., there was a brief by *Walter C. Crocker* and *William A. Adler,* both of Eau Claire, and oral argument by *Mr. Adler.*

For the respondent there was a brief by *William A. Cameron* and *Howard W. Cameron,* both of Rice Lake, and oral argument by *Howard W. Cameron.*

FAIRCHILD, J. The only questions are whether there is evidence to support the court's finding that the damage occurred while the cheese was being transported by Spector and whether plaintiff sufficiently proved the amount of damages. It appears to be conceded that if the cheese was damaged before delivery at Philadelphia, plaintiff is entitled to its judgment against Briggs, the initial carrier, and Briggs is entitled to its judgment against Spector.

Exhibit 11 was a receipt signed by a representative of the warehouse company indicating that the cheese was received in good condition. A receipt, however, unless it is contractual in nature, is simply a written admission and may be explained, varied, or contradicted by parol. *Twohy Mercantile Co. v. Estate of McDonald* (1900), 108 Wis. 21, 23, 83 N. W. 1107; *Danielson v. Bank of Scandinavia* (1930), 201 Wis. 392, 400, 230 N. W. 83.

Exhibit 7 was a receipt issued by the warehouse company to plaintiff on the same date. It bore the notation, "tubs bad condition." This document was not admissible against de-

fendants as evidence of the condition of the cheese. In that respect it was self-serving. It would not support the finding that the cheese had been damaged prior to delivery. Trial was before the court without a jury, however, and we do not consider its reception in evidence prejudicial.

Exhibit 4, the inspection report, was properly received in evidence. From the instructions printed on it and the questions it contains, the report form is clearly intended for the particular purpose of reporting the facts which will be helpful in determining whether damage discovered after delivery occurred prior to delivery. In the normal course it is to be signed both by the consignee and the carrier and was so signed in this case. The representatives of both the carrier and the consignee in signing the form agreed that the damage they observed could have been noticed at the time of delivery. That fact would tend to give weight to the recital in Exhibit 11. Both agreed, however, that the tub staves had been "evidently broken by rolling" and that this condition of the tubs "indicates that loss or damage occurred while in possession of carrier." This was short of an admission of liability but was at least an admission on behalf of the carrier that the condition of the tubs was evidence, even though not conclusive, that the damage had occurred before delivery. Expression of a conclusion drawn from facts personally observed may constitute an admission. *Zigler v. Kinney* (1947), 250 Wis. 338, 346, 27 N. W. (2d) 433. The wording of the question on the form calls for the expression of the opinion and the carrier's representative must certainly have been authorized to express it.

It is either established or may be inferred that the delivery to the warehouse company was accomplished on Friday, that sometime on or before the following Monday, the information as to the existence of damage was conveyed to the Eavenson firm representing plaintiff at Philadelphia; that Eavenson

telephoned Spector and that Spector's representative made his inspection on Monday.

We conclude that Exhibits 11 and 4, viewed in the light of the circumstances, presented an issue of fact which the court has resolved by its finding. Doubtless the court considered the fact that Saturday and Sunday intervened between the time of delivery and the time of inspection.

We do not view Spector's telegram dated September 9th as an admission of liability. It properly, however, can be construed as an agreement that the sale at 25¢ per pound determined the value of the cheese after damage. Plaintiff gave Spector an opportunity to indicate its position because plaintiff was probably concerned lest Spector would claim that the value of the damaged cheese was greater than 25¢ per pound. Spector's telegram consenting to the sale indicated that it was satisfied with that figure. The fact that it consented indicates that it realized that it had some interest at stake. Upon the trial plaintiff proved the market value of the cheese if not damaged. The court properly computed the money loss by taking the difference between the market value undamaged and the price obtained by sale.

*By the Court.*—Judgment affirmed.