MERCURDO, Plaintiff-Appellant, v. COUNTY OF MILWAUKEE, Defendant-Respondent.

*No. 75–847. Submitted on briefs February 8, 1978.—Decided April 5, 1978.*
(Also reported in 264 N.W.2d 258.)

For the appellant the cause was submitted on the brief of *Thompson & Coates, Ltd.* of Racine.

For the respondent the cause was submitted on the brief of *Robert P. Russell,* corporation counsel, and *James J. Bonifas,* deputy corporation counsel.

DAY, J. This is an appeal from a judgment dismissing the plaintiff-appellant, Josephine Mercurdo's (hereafter plaintiff) medical malpractice complaint. The complaint alleged that the defendant-respondent, Milwaukee County's (hereafter defendant) negligence in administering intravenous fluids caused second and third degree burns and disfigurement to plaintiff's left forearm.

The issues on this appeal are:

1. Did the trial court err by refusing to instruct the jury on the doctrine of *res ipsa loquitur?*

2. Did the trial court err by excluding from evidence a portion of the defendant's "Accident Record" completed by a senior medical student working at defendant's hospital?

3. Did the trial court err by refusing to grant the plaintiff's motion for mistrial after the defendant's at-

torney told the jurors on voir dire that damages recovered by the plaintiff might have to be paid by them as taxpayers?

We hold that the trial court erred in deciding each of these three issues.

The plaintiff came from Puerto Rico to Milwaukee to visit her brother in April, 1970. On July 22, 1970 she was pregnant and fell down the basement stairs in her brother's house.

On July 26, 1970 she entered Milwaukee County General Hospital. On admission her temperature was 105 degrees and her condition was listed as critical. The plaintiff was apparently suffering from septicemia, a blood stream infection, caused by the incompletely aborted fetus.

At approximately 6:30 p.m., on July 26th, the plaintiff was administered five million units of aqueous penicillin. The plaintiff was also given pitocin to induce uterine contractions to expel the fetus. The pitocin could not have caused the burns to the plaintiff's arm according to the expert testimony at the trial. The penicillin was administered by volutrol, an intravenous (I.V.) device. The volutrol is a small chamber attached to the I.V. apparatus and permits the drug to drip into a patient's body over a period of time along with the plain I.V. solution.

At approximately 8:00 p.m., Mrs. Mercurdo received another five to ten million units of aqueous penicillin by means of an I.V. "push." This method involved injecting the penicillin with a syringe through the I.V. apparatus causing a more rapid injection of the solution into the blood stream.

At the trial the defendant's medical witnesses were Registered Nurse Candace Czarnecki and Dr. Richard F. Mattingly, Director of the Gynecology and Obstetrics Department at the Milwaukee County General Hospital.

Both of these witnesses agreed that penicillin in a concentrated form would be caustic and could damage the tissues surrounding the I.V. site if the penicillin got out of the vein.

When the I.V. was given to the plaintiff, she immediately complained of pain and when the later I.V. "push" was administered she suffered more intense pain and her arm began to swell. She developed a blister which became black and her hospital bracelet had to be removed. This blistering was caused by the infiltration of the I.V. fluids in the tissue around the I.V. site. The infiltration of the penicillin into the plaintiff's forearm caused ischemic necrosis (dead tissue from lack of blood supply) and the blackened tissue later sloughed off.

The I.V. was attached to the plaintiff's arm with bandages or tape. The arm that the I.V. was inserted into was not restrained or tied down.

Between 8:55 p.m. and 9:40 p.m., the plaintiff spontaneously delivered a macerated still-born fetus and placenta.

After recovering from her septic abortion, the plaintiff returned to her brother's house for three days and then went back to the hospital for a tissue transplant on her forearm. Skin was removed from the plaintiff's right thigh and grafted to the area on the left forearm. The grafted skin became black and a second transplant operation in the same area had to be performed.

The plaintiff's injury left a scar near her left wrist two to three inches wide and three to four inches long. The skin grafts from her right thigh caused three scars that were slightly larger than the one near her wrist.

On December 11, 1975 the jury returned a verdict that the defendant, through its registered nurses and doctors at Milwaukee County General Hospital, was not negligent in the care and treatment of the plaintiff. On December 26, 1975 the plaintiff filed a motion after verdict, re-

questing that the trial court set aside the portion of the verdict dealing with liability and grant a new trial on liability. The plaintiff's motion was denied and judgment was entered on the verdict, dismissing the complaint.

Further facts will be discussed below in relation to each of the plaintiff's claims of trial court error.

## Res Ipsa Loquitur.

The plaintiff claims that the trial court erred in refusing to instruct the jury on the doctrine of *res ipsa loquitur*.[1] *Res ipsa loquitur* may apply where

". . . the accident is of such a nature that it can be said, in the light of past experience, that it probably was the result of negligence by someone and that the defendant is probably the person who is responsible. . ." *Fehrman v. Smirl*, 20 Wis.2d 1, 25, 121 N.W.2d 255, 122 N.W.2d 439 (1963).

"The procedural effect of res ipsa loquitur in Wisconsin is that of a permissible inference rather than rebuttable presumption. (citations omitted). As a permissible inference, the effect of the doctrine of res ipsa loquitur is merely to permit the jury to draw a reasonable

---

[1] The instruction requested was similar to Wis. J.I.—Civil 1024 and stated:

"You are instructed that if you find that the burns sustained by the Plaintiff were sustained during the course of care and treatment given her by the agents, servants and employees of the Defendant, and if you further find from expert testimony in this case the injury sustained by the Plaintiff is of a kind that does not ordinarily occur if such agents, servants and employees exercise proper care and skill, then you may infer, from the fact of the injury, that such agents, employees and servants failed to exercise that degree of care and skill which such agents, servants and employees who practice in the City of Milwaukee or vicinity, usually exercise.

"This rule will not apply if the Defendant has offered an explanation for the injury which satisfies you that such injury to the Plaintiff did not occur through any failure on the part of such agents, servants and employees to exercise due care and skill."

inference from circumstantial evidence." *Fehrman, supra* at 20 Wis.2d 21.

Prior to 1963 *res ipsa loquitur* was not applicable to medical malpractice cases in Wisconsin. But in *Fehrman v. Smirl, supra,*

". . . this court overruled prior cases and adopted the general rule that res ipsa loquitur may be invoked in medical malpractice actions when a layman is able to say as a matter of common knowledge that the consequences of the professional treatment are not those which ordinarily result if due care is exercised. This court also adopted the minority rule that when there is no basis of common knowledge for such a conclusion, an instruction embodying res ipsa loquitur may be grounded on expert medical testimony." *Burnside v. Evangelical Deaconess Hospital,* 46 Wis.2d 519, 523, 175 N.W.2d 230 (1970).

The plaintiff argues that a layman could conclude as a matter of common knowledge that a woman who receives an I.V. should not leave the hospital with a large burn on her wrist that requires plastic surgery to repair. However, the court need not reach this contention because there was also expert testimony that the plaintiff could not have received such a burn on her arm unless someone neglectd their duty.[2] But even where there is expert testimony that would support a *res ipsa* inference, the instruction will not always be given.

"When both parties have rested and the case is ready for the jury, either of two conditions may exist which would render it error to give the res ipsa loquitur instruction. The plaintiff may have proved too little or he may have proved too much. For example, if on the

[2] The plaintiff's expert was Mrs. Edwina A. Fouts, a Registered Nurse and a Licensed Practical Nurse. Mrs. Fouts had considerable experience as a practical, registered and teaching nurse in the Milwaukee area. She testified concerning the standard of care in area hospitals. Mrs. Fouts was competent to testify on the standard of care required in the use of I.V. devices.

one hand, there has been no evidence which would remove the causation question from the realm of conjecture and place it within the realm of reasonable inferences, then the plaintiff has proved too little, and the doctrine of res ipsa loquitur is of no avail, and the case must be dismissed.

"On the other hand, it is possible that the plaintiff's evidence of negligence in a given case has been so substantial that it provides a full and complete explanation of the event, if the jury chooses to accept it. In that case, causation is no longer a mystery, and the *res ipsa loquitur* instruction would be superfluous and erroneous. *Fehrman v. Smirl*, (1964), 25 Wis.2d 645, 131 N.W.2d 314; *Puls v. St. Vincent Hospital* (1967), 36 Wis.2d 679, 154 N.W.2d 308; and *Knief v. Sargent, supra.*

"There is, of course, a middle ground between these two extremes where the giving of the instruction would be proper. Prosser describes that situation as follows:

"'. . . the introduction of some evidence which tends to show specific acts of negligence on the part of the defendant, but which does not purport to furnish a full and complete explanation of the occurrence does not destroy the inferences which are consistent with the evidence, and so does not deprive the plaintiff of the benefit of res ipsa loquitur.' Prosser, Law of Torts (Hornbook Series) (3d ed.), ch. 6, p. 236, sec. 40." *Utica Mutual Ins. Co. v. Ripon Cooperative*, 50 Wis.2d 431, 439, 184 N.W.2d 65 (1971).

"If the evidence offered shows substantial proof of negligence on the part of the defendants, which if accepted by the jury is a complete explanation of the accident, then giving the res ipsa loquitur instruction is superfluous and erroneous. In some cases the adequacy of the proof is a close question and in those instances giving the instruction rests within the sound discretion of the trial court." *Turtenwald v. Aetna Casualty*, 55 Wis.2d 659, 665, 667, 201 N.W.2d 1 (1972).

The defendant contends that the *res ipsa* instruction should not have been given because it was not warranted by the totality of the evidence. The plaintiff testified that she experienced pain when the I.V. was admin-

istered, and more intense pain when the I.V. "push" was given. Registered Nurse Czarnecki agreed that the plaintiff complained of pain when the I.V. "push" was given, but that the plaintiff was not thrashing around and did not need restraints. The hospital "accident record" (discussed below) states that the accident could have been prevented if the plaintiff's arm had been restrained to prevent her from "thrashing around."

Dr. Mattingly testified that the injury to the plaintiff was caused by penicillin which is caustic. The penicillin escaped into the surrounding tissue because of increased pressure on the vein wall when the I.V. "push" was administered. Registered Nurse Fouts opined that when a person is in labor, receiving pitocin through an I.V. and thrashing around, then that person should be watched over and have her arm restrained. The purpose of these precautions were to keep the I.V. needle from moving. Neither Dr. Mattingly nor Nurse Fouts were at the hospital at the time of the accident.

The totality of this evidence does not dictate that the *res ipsa* instruction should not have been given. The testimony conflicted in several instances. Nurse Fouts claimed that the defendant was negligent and Dr. Mattingly claimed that it was not. In Wisconsin the procedural effect of *res ipsa* is a permissible inference and not a rebuttable presumption that disappears in the face of conflicting evidence. The jury was still allowed to draw that permissible inference of negligence, even though some conflicting evidence was introduced. The jury instruction offered by the plaintiff in this case was modeled after Wisconsin Civil Jury Instruction No. 1024 and the last sentence of that instruction concerning the *res ipsa* inference stated,

"This rule will not apply if the Defendant has offered an explanation for the injury which satisfies you that such injury to the Plaintiff did not occur through any

failure on the part of such agents, servants and employees to exercise due care and skill."

Despite Dr. Mattingly's testimony a jury could still have reasonably inferred from the testimony of Nurse Fouts that the defendant's employees failed to exercise due care. The instruction would have allowed them to draw such a permissible inference.

The defendant also contends that the *res ipsa* instruction should not have been given because the testimony of Nurse Fouts constituted not only prima facie evidence of negligence, but also a full explanation of the accident. We disagree. Nurse Fouts testified that the plaintiff's arm should have been restrained and that she should have been watched over to try to keep the I.V. from moving. The failure to take these precautions would permit the I.V. to move about in plaintiff's arm and result in her getting the blister. Thus, the conclusion the jury could draw was that ". . . the consequences of the professional treatment (here, the blister) are not those which ordinarily result if due care (watching and restraint) is exercised." *Burnside,* 46 Wis.2d at 523.

But, Nurse Fouts did not testify that penicillin caused the burn to the plaintiff's arm. All of Fouts' testimony concerned pitocin, which is not caustic, and did not mention penicillin as being a cause of the injury. The testimony concerning penicillin and its caustic nature came from Dr. Mattingly who contradicted practically all of Nurse Fouts' testimony. Nurse Fouts' testimony did not furnish a complete explanation of the accident and the *res ipsa* instruction should have been given.

## *Accident Record.*

The plaintiff claims error because the trial court excluded part of the hospital's "accident record" from evidence. Some of the record was admitted, but an explana-

tion of how the accident could have been prevented, stating that, "Patient (sic) arm should have been restrained so she could not thrash around while in pain" was excluded.[3] The defendant's counsel objected to this portion of the accident record on the grounds that it was hearsay and did not fall within any of the exceptions or exclusions to the hearsay rule.[4] The plaintiff contended that the statement was not barred as hearsay because it was an admission.[5]

Sec. 908.01(4), Stats. (1975) provides that certain admissions are not hearsay.

"908.01(4) . . . A statement is not hearsay if:
". . .
"(b) *Admission By Party Opponent.* The statement is offered against a party and is: . . .
"3. A statement by a person authorized by him to make a statement concerning the subject, or
"4. A statement by his agent or servant concerning a matter within the scope of his agency or employment made during the existence of the relationship. . . ."

In this case the contested statement was made by W. Marsh, a senior medical student in his second month of training at the hospital. Mr. Marsh was on duty at Milwaukee County General Hospital on July 26, 1970, working in both the plaintiff's ward and the admitting center.

---

[3] The hospital's accident form called for an explanation as to how the accident might have been prevented.

[4] The defendant does not contend that the statement should have been barred because it was an opinion of how the accident might have been prevented. The opinion rule does not preclude admissions phrased in conclusory terms such as "fault." *Zigler v. Kinney,* 250 Wis. 338, 346, 347, 27 N.W.2d 433, 437 (1947). Sec. 907.04, Stats. (1975), provides that opinion evidence is not rendered inadmissible because ". . . it embraces an ultimate issue to be decided by the trier of fact." Sec. 907.04, Stats. was not intended to alter *Zigler, supra,* Judicial Council Committee's Note: 59 Wis.2d R. 242 (1973).

[5] The plaintiff also claimed other basis for admitting the accident report. In our view of the case we need not discuss these alternative grounds.

When an accident occurred within the hospital, the usual hospital practice was for the physician present at the time, to fill out the accident report, as soon as possible after the accident occurred. The accident report was dated July 26, 1970 and signed by Dr. Kirkhope who did not testify at the trial, and who was not on the plaintiff's ward when she was being treated.

The defendant argues that under sec. 908.01 (4) (b) 3, Stats. there was no testimony to show that Mr. Marsh was authorized to make the statement. But under sec. 908.01 (4) (b) 4, Stats., there is no requirement that the statement be authorized by the defendant. The latter section only requires that the statement concern a matter within the scope of Mr. Marsh's agency or employment and that it be made during the existence of the relationship. *Perzinski v. Chevron Chemical Co.*, 503 F.2d 654, 658 (7th Cir. 1974).

The Judicial Council Committee's Note on sec. 908.01 (4) (b) 4, Stats. states as follows,

". . . 4. This provision is a change in Wisconsin law. Wisconsin cases, *Schoemaker v. Marc's Big Boy*, 51 Wis.2d 611, 617, 187 N.W.2d 815, 818 (1971) ; *Grunwald v. Halron*, 33 Wis.2d 433, 439, n. 2, 147 N.W.2d 543, 548, n. 2 (1967) ; *Rudzinski v. Warner Theatres*, 16 Wis.2d 241, 245, 114 N.W.2d 466, 468 (1962), have held that hearsay statements of an agent are not admissible against his principal as admissions unless the agent's statements were 'within the scope of his authority to *speak for his principal*' (emphasis added). Note that in these cases the declarations were not qualified as a present sense impression or an excited utterance exception to the hearsay rule. This subsection would modify the phrase to read 'concerning a matter within the scope of his agency or employment,' *Burton v. Brown*, 219 Wis. 520, 523, 263 N.W. 573, 574, (1935), and add the condition that it be made during the existence of the relationship. *Estate of Leedom*, 218 Wis. 534, 539, 259 N.W. 721, 261 N.W. 683,

684 (1935). This change would be consistent with *Vogel v. Delaware, L. & W. R. Co.*, 168 Wis. 567, 573, 171 N.W. 198, 200 (1919)." 59 Wis.2d R. 243, 244.

The testimony showed that Mr. Marsh was on duty in the plaintiff's ward at the time of the accident and at the time he completed the accident record. These facts are enough to show that Mr. Marsh was either an agent or employee of the hospital and that the report was made within and during the existence of the relationship. The report should have been admitted.

The exclusion of the statement in the accident record was prejudicial error. The record stated that the accident might have been prevented if the plaintiff's arm had been restrained so she could not "thrash around while in pain." This statement was directly contrary to considerable testimony by Dr. Mattingly that restraints were not needed. If the statement had been admitted, plaintiff's counsel could have argued that at least one medically trained person, present at the time, thought that restraints were needed and that they would have prevented the injury.

### *Voir Dire.*

The plaintiff contends that the trial court erred in refusing to grant plaintiff's motion for mistrial. The motion was made after the defendant's counsel asked the potential jurors on voir dire whether their verdict would be influenced because, as taxpayers, they might be called upon to pay a part of any judgment recovered by the plaintiff.[6]

In *Davey v. City of Janesville*, 111 Wis. 628, 87 N.W. 813 (1901), this court held that it was proper for the

---

[6] At a hearing on motions after verdict, the trial court agreed that the question was improper, but stated that he did not believe that the question had a prejudicial effect.

plaintiff's attorney to ask whether taxpayer jurors would be influenced in their verdict because they might be called upon to pay a part of any judgment. The plaintiff agrees that a plaintiff should be allowed to ask jurors whether their status as taxpayers would influence their decision in the case. According to the plaintiff this is a strategical choice that the plaintiff's attorney must make: should prejudices be explored or should they be ignored? However, the plaintiff contends that when the defendant county asks this question it can serve no purpose, except to create passion and prejudice among the prospective jurors. We agree. The defendant had no legitimate purpose in asking the question and plaintiff's motion for mistrial should have been granted.

*By the Court.*—Judgment reversed and cause remanded for a new trial.